564 F.2d 567
 184 U.S.App.D.C. 82
 In re POSSIBLE VIOLATIONS OF 18 USC 371, 641, 1503.
Appeal of Arthur MAREN.
 No. 77-1704.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Aug. 22, 1977.
Decided Sept. 2, 1977.
 
 Leon Friedman, New York City, of the Bar of the Court of Appeals of New York, pro hac vice by special leave of court, with Leonard J. Koenick, Washington, D. C., was on the brief, for appellant.
 Kenneth M. Robinson, Washington, D. C., also entered an appearance for appellant.
 Judith Hetherton, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., Carl S. Rauh and Robert W. Ogren, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.
 John D. Grad and Philip J. Hirschkop, Alexandria, Va., filed a brief on behalf of the Church of Scientology as amicus curiae.
 Eugene R. Scheiman, New York City, filed a brief on behalf of The National Council of Churches of Christ in the United States of America as amicus curiae.
 Before ROBINSON, ROBB and WILKEY, Circuit Judges.
 Opinion per curiam.
 
 
 1
 Concurring opinion filed by SPOTTSWOOD W. ROBINSON, III, Circuit Judge.
 
 PER CURIAM:
 
 2
 Appellant is Arthur Maren, Director of Public Relations for the Churches of Scientology in the United States. He appeals from an order of the District Court holding him in contempt for refusing to answer three questions put to him in the course of a grand jury investigation of criminal conduct charged to members of the Church. For the reasons discussed below, we affirm.
 
 
 3
 * The background of this dispute can be stated briefly. The Government alleges that two members of the Church, Gerald Wolfe and Michael Meisner, using false Government identification, entered the United States Courthouse in the District of Columbia on three occasions in order to surreptitiously copy Church-related documents in the United States Attorney's offices. Wolfe pleaded guilty to false use of a Government seal; Meisner entered into discussions with the United States Attorney's Office concerning criminal violations assertedly committed by himself and others on behalf of the Church.
 
 
 4
 In the course of his conversation with the prosecutors, Meisner stated that high ranking church officials were involved in copying of Government documents, electronic eavesdropping on Internal Revenue Service officials and concoction of false testimony for Gerald Wolfe to give to the grand jury. Based largely on the information furnished by Meisner, the Government obtained warrants to search premises of the Guardian Church in Los Angeles and the Founding Church in the District of Columbia. During the execution of the warrant in Los Angeles, an Assistant United States Attorney served appellant with a Jane Doe subpoena to appear as a witness before the grand jury in the District of Columbia.[1]
 
 
 5
 Appellant subsequently appeared before the grand jury on four separate occasions twice on July 26, 1977 and twice on July 29, 1977. On all four occasions he refused to answer any questions other than those soliciting his name, address, and employment. At no time did he claim the privilege against self-incrimination; indeed, he disdains that privilege as a defense.
 
 
 6
 Following appellant's third grand jury appearance and after concluding that he had failed to assert any legally cognizable privilege, the District Court ordered him to testify. Upon his return to the grand jury, appellant was asked the following three questions:
 
 1) Do you know Gerald Wolfe?[2]
 
 7
 2) (D)id you . . . discuss with anyone plans for Gerald Wolfe to develop an untrue cover story with regard to his entry into the United States Courthouse on June 11th, 1976 for him to tell . . . (to the) Grand Jury . . . ?[3]
 
 
 8
 3) (D)id you participate in discussions with anyone in the nature of plans to enter (an Internal Revenue Service) conference room . . . for the purpose of planting a listening device with which to monitor conversations of (Internal Revenue Service) officials . . . (and) did you ever read or discuss a transcript of discussions of officials of the Internal Revenue Service come at by means of the bugging of a conference room . . . ?[4]
 
 
 9
 Appellant's refusals to answer the first two questions were based on an asserted First Amendment privilege to resist inquiry "into the internal structure of (his) church, its religious tenets or . . . information relating to (his) confidential relationships with persons in the course of the performance of (his) duties . . . "[5] until the Government established that there was probable cause to believe he possessed relevant information, that the information could not be obtained from other sources, and that the crimes being investigated were of a serious nature.[6] In response to the two-part third question, appellant stated that the inquiry was an attempt to extract information in order to construct a criminal case against him, and as such amounted to an abuse of legal process and a violation of the doctrine of separation of powers; consequently, he refused to answer until assurances were given that the information would not be disclosed to the Executive Department.[7] The District Court concluded that appellant's continued refusal to answer these questions constituted contempt of court, and pursuant to 28 U.S.C. § 1826(a)[8] ordered him confined until he was willing to testify, the period of confinement not to exceed the lesser of the term of the grand jury or eighteen months.[9]
 
 II
 
 10
 The parties agree that the only issue before us is whether appellant was privileged to refuse to answer the three questions put to him during his fourth and final grand jury appearance. As we have stated, on that occasion appellant asserted two privileges a First Amendment privilege and a separation-of-powers privilege. Since we were informed at oral argument that appellant has abandoned his separation-of-powers argument, we will not address it.[10]
 
 
 11
 There remains, then, only the question whether appellant justifiably invoked the First Amendment in support of his refusal to testify. Here, too, appellant has departed from his previous position. He no longer contends, as he did before the grand jury, for First Amendment protection on the premise that the Government inquired into religious beliefs and confidences. Instead, he now makes the broad contention that as a minister he is privileged under the First Amendment to refuse to answer any question until the Government establishes: 1) it is investigating serious crime; 2) he, as the witness called, is likely to have relevant information; 3) there is a substantial connection between the information sought and the governmental interest involved; and 4) the means of obtaining the information are no more drastic than necessary to forward the governmental interest.[11] Appellant argues that there has been no showing that he was likely to possess relevant information or that the information could not be obtained from other sources.
 
 
 12
 Appellant relies almost entirely upon Branzburg v. Hayes,[12] as the basis for his broad First Amendment claim. He asserts that in Branzburg the Supreme Court held that newsmen are protected from grand jury questioning unless the Government meets the preconditions referred to above, and that the First Amendment requires similar protection for religious officials and workers.
 
 
 13
 Appellant's view of the constitutional protection appropriate for newsmen, though wholly unsupported by the holding in Branzburg is not without adherents. Dissenting in Branzburg, Mr. Justice Stewart, joined by two other members of the Court, argued that "when a reporter is asked to appear before a grand jury and reveal confidences, . . . the government must (1) show that there is probable cause to believe that the newsman has information that is clearly relevant to a specific probable violation of law; (2) demonstrate that the information sought cannot be obtained by alternative means less destructive of First Amendment rights; and (3) demonstrate a compelling and overriding interest in the information."[13]
 
 
 14
 The Branzburg majority, however, rejected that formulation in clear and unmistakable terms.[14] In their view, its adoption would frustrate the historic role of the grand jury in determining probable violations of law.[15] Further, its recognition would needlessly "embroil() (courts) in preliminary factual and legal determinations with respect to whether the proper predicate had been laid for the reporter's appearance . . . ."[16] These considerations "dispose(d) of the reporters' claims that preliminary to requiring their grand jury appearance, the State must show that . . . (reporters) possess relevant information not available from other sources . . . ."[17]
 
 
 15
 The Branzburg decision did not leave newsmen completely without protection from indiscriminate probing for news sources. In particular, the Court observed that official harassment of the press undertaken solely to disrupt a reporter's relationship with news sources would clearly be subject to judicial control.[18] In a separate opinion, Mr. Justice Powell, who also concurred in the opinion of the Court, emphasized and elaborated upon this aspect of the majority opinion:
 
 
 16
 If a newsman believes that the grand jury investigation is not being conducted in good faith he is not without remedy. Indeed, if the newsman is called upon to give information bearing only a remote and tenuous relationship to the subject of the investigation, or if he has some other reason to believe that his testimony implicates confidential source relationships without a legitimate need of law enforcement, he will have access to the court on a motion to quash and an appropriate protective order may be entered. The asserted claim to privilege should be judged on its facts by the striking of a proper balance between freedom of the press and the obligation of all citizens to give relevant testimony with respect to criminal conduct. The balance of these vital constitutional and societal interests on a case-by-case basis accords with the tried and traditional way of adjudicating such questions.[19]
 
 
 17
 We conclude that Branzburg squarely rejected the very privilege appellant asserts that it established. A newsman can claim no general immunity, qualified or otherwise, from grand jury questioning. On the contrary, like all other witnesses, he must appear and normally must answer. If the grand jury's questions are put in bad faith for the purpose of harassment, he can call on the courts for protection.
 
 
 18
 It follows that appellant's parallel claim of a blanket religious-worker's privilege must fail. A minister, like a newsman, has no general right to resist all questioning; "like all other witnesses," appellant is "not . . . in a position to litigate at the threshold the (Government's) very authority to subpoena him."[20] Thus, assuming arguendo that Scientology is a religion within the meaning of the First Amendment and that appellant is a minister, we must deny appellant's sweeping assertion that solely by virtue of his status as a minister of the Church he may refuse all questioning until the Government satisfies the conditions upon which he insists. In light of Branzburg, a contrary holding would sacrifice the essential societal interest in the detection and prosecution of crime without advancing any important First Amendment interest.
 
 
 19
 Of course, a minister, like a newsman, is free to seek court protection from official harassment. Appellant, however, no longer contends that the three questions inquire into religious beliefs or information obtained in the course of his religious duties. Moreover, there can be no claim whatsoever that the questions are asked solely for purposes of harassment. We hold that under these circumstances appellant was not entitled to invoke the protection of the First Amendment, and the judgment of the District Court is therefore
 
 
 20
 Affirmed.
 
 
 21
 SPOTTSWOOD W. ROBINSON, III, Circuit Judge, concurring:
 
 
 22
 I join in the court's disposition of this appeal, and generally in the court's opinion as far as it goes. I believe it helpful, however, to point out the limits of what we today decide.
 
 
 23
 Appellant asserts a privilege both broad in application and substantial in its impositions upon the Government. The court, correctly in my view, declines to create a privilege generally available to religious officials and workers to refuse grand jury questions of any type unless and until the Government has met certain preordained conditions.[1] With the concessions made by appellant, he would not be benefited by and thus no one has now to adjudge the efficacy of a privilege narrower in its scope and less stringent in its burden as to what the Government must show to overcome it.
 
 
 24
 In subscribing to the holding of the court, I do not imply that one appearing before a grand jury might not have some sort of qualified privilege to decline to answer some types of questions, such as those inquiring into religious beliefs and confidences.[2] I would not rule out the possibility that some grand jury questioning might so interfere with the free exercise of religion as to warrant some measure of judicial protection, even absent an allegation of bad faith.[3] Branzburg,[4] after all, rested in substantial part upon a judgment that forced disclosure of news sources in response to relevant grand jury questions would not significantly constrict the free flow of news.[5] More serious interference with First Amendment interests might call for correspondingly greater protection.
 
 
 25
 We need not, of course, pass on the validity of a privilege of greater qualification than that suggested by appellant. Indeed, our duty as judges is to refrain from constitutional pronouncements that are not a matter "of strict adjudicative necessity."[6] What we decide, and all we decide, is that appellant's status as a minister in the Church of Scientology does not by itself privilege him to refuse until the Government satisfies at the threshold a stringent four-part test to answer the three questions put to him, which from aught that appears do not implicate free exercise values.
 
 
 
 [1]
 The parties disagree as to whether appellant was subpoenaed solely because he appeared to contest the search warrant or because the Assistant United States Attorney ascertained that he was the Director of Public Relations of the Guardian's Office and as such might well possess information relevant to the investigation. There is nothing in the record that compels either conclusion, though on balance the latter version appears more likely. We need not resolve this dispute, since in our view appellant was obliged in either event to appear as a witness and answer the three questions at issue here
 
 
 [2]
 Joint Appendix (J.App.) 130
 
 
 [3]
 J.App. 133
 
 
 [4]
 J.App. 135-136
 
 
 [5]
 J.App. 132
 
 
 [6]
 J.App. 131-133, 134-135
 
 
 [7]
 J.App. 137
 
 
 [8]
 28 U.S.C. § 1826(a) provides in relevant part:
 (a) Whenever a witness in any proceeding before or ancillary to any court or grand jury of the United States refuses without just cause shown to comply with an order of the court to testify . . . the court, upon such refusal, or when such refusal is duly brought to its attention, may summarily order his confinement at a suitable place until such time as the witness is willing to give such testimony . . . . No period of such confinement shall exceed the life of
 1) the court proceedings, or
 2) the term of the grand jury, including extensions, before which such refusal to comply with the court order occurred but in no event shall such confinement exceed eighteen months.
 
 
 [9]
 J.App. 187
 
 
 [10]
 On appeal appellant seeks to interject a new claim. He argues that because of the unusual circumstances of this case, the Government was required to establish by affidavit that the grand jury's questions were relevant to its investigation. Brief for Appellant at 33-37. We know of no such requirement. In any event, appellant has been fully informed of the grand jury's mission and the relevance of the questions to the grand jury's investigation is undisputed and indisputable
 
 
 [11]
 Brief of Appellant at 23
 
 
 [12]
 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972)
 
 
 [13]
 Branzburg v. Hayes, supra note 12, 408 U.S. at 743, 92 S.Ct. at 2681, 33 L.Ed.2d at 676 (footnotes omitted)
 
 
 [14]
 Id. at 690, 92 S.Ct. at 2651, 33 L.Ed.2d at 644-645
 
 
 [15]
 Id. at 701-702, 92 S.Ct. at 2666-2667, 33 L.Ed.2d at 651-653
 
 
 [16]
 Id. at 705, 92 S.Ct. at 2669, 33 L.Ed.2d at 653
 
 
 [17]
 Id. at 701, 92 S.Ct. at 2666, 33 L.Ed.2d at 651
 
 
 [18]
 Id. at 707-708, 92 S.Ct. at 2669-2670, 33 L.Ed.2d at 655
 
 
 [19]
 Id. at 710, 92 S.Ct. at 2671, 33 L.Ed.2d at 656 (footnote omitted)
 
 
 [20]
 Id. at 710 n.*, 92 S.Ct. at 2671 n.*, 33 L.Ed.2d at 656 n.* (Powell, J., concurring)
 
 
 [1]
 The four conditions for which appellant contends are discussed in the court's opinion in text accompanying note 11. Nearly the same requirements were urged by Justice Stewart's dissenting opinion in Branzburg v. Hayes, 408 U.S. 665, 743, 92 S.Ct. 2646, 2681, 33 L.Ed.2d 626, 676-677 (1972), but were rejected by a majority of the Supreme Court
 
 
 [2]
 The concurring opinion of Justice Powell, who was also the fifth member of the Branzburg majority, rejects an automatic, broadly-applicable First Amendment privilege for reporters, but does suggest case-by-case protection of newsmen in some special circumstances. 408 U.S. at 710 & n.*, 92 S.Ct. at 2671 & n.*, 33 L.Ed.2d at 656 & n.*. Unlike Justice Stewart in dissent, Justice Powell would initially presume against a privilege, and thus would put the burden on the newsman to show that the specific First Amendment values he seeks to vindicate outweigh the governmental interest in effective functioning of the particular grand jury investigation. Id.; see United States v. Liddy, 155 U.S.App.D.C. 382, 383, 478 F.2d 586, 587 (1972) (separate opinion of Leventhal, J.)
 
 
 [3]
 The First Amendment implications of governmental intrusion into religious confidences, for example, might be stronger than the "consequential, but uncertain" effects of intrusion into newsman-informant confidences. Branzburg v. Hayes, supra note 1, 408 U.S. at 690, 92 S.Ct. at 2661, 33 L.Ed.2d at 644-645. The forced breach of informant confidences might be at least one step attenuated from the First Amendment interest in the free flow of news, while religious confidences arguably are directly protected by the Free Exercise Clause
 Because appellant has not attempted to make out a prima facie showing of bad faith or abuse of the grand jury, although he occasionally hints at such concerns, we need not determine how a district court should respond to such a showing. Accordingly, I do not subscribe to the dicta in notes 1 and 10 of the court's opinion.
 
 
 [4]
 Branzburg v. Hayes, supra note 1
 
 
 [5]
 408 U.S. at 690, 693-694, 92 S.Ct. at 2661, 2662-2663, 33 L.Ed.2d at 644-645, 646-647
 
 
 [6]
 Langston v. Johnson, 156 U.S.App.D.C. 5, 7, 478 F.2d 915, 917 (1973); see Ashwander v. TVA, 297 U.S. 288, 346-347, 56 S.Ct. 466, 483, 80 L.Ed. 688, 711 (1936) (Brandeis, J., concurring)