**In re GRAND JURY SUBPOENA AMERICAN BROADCASTING COMPANIES, INC.**

No. GJ–96–3.

United States District Court, E.D. Arkansas, Western Division.

Nov. 6, 1996.

sociation, which submitted an amicus brief in support of ABC.

## MEMORANDUM OPINION AND ORDER

SUSAN WEBBER WRIGHT, District Judge.

Before the Court is the motion of American Broadcasting Companies, Inc. ("ABC") to quash a grand jury subpoena seeking the full transcript and videotape of an interview with Susan H. McDougal conducted by ABC News Anchor Diane Sawyer in New York City on August 30, 1996.[1] The United States, by Independent Counsel Kenneth W. Starr, has responded in opposition to the motion. For the reasons that follow, the Court finds that ABC's motion to quash the grand jury subpoena should be and hereby is denied.

### I.

On August 5, 1994, the Special Division of the United States Court of Appeals for the District of Columbia appointed Kenneth W. Starr as Independent Counsel to conduct an investigation into the matter known as "Whitewater." The court appointed Mr. Starr pursuant to a request by Attorney General Janet Reno following Congress' reenactment of the Independent Counsel provisions of the Ethics in Government Act of 1978, 28 U.S.C. §§ 591–99. The court conferred upon Mr. Starr

> full power, independent authority, and jurisdiction to investigate to the maximum extent authorized by the [statute] whether any individuals or entities have committed a violation of any federal criminal law ... relating in any way to James B. McDougal's, President William Jefferson Clinton's, or Mrs. Hillary Rodham Clinton's relationships with Madison Guaranty Savings and Loan Association, Whitewater Development Corporation, or Capital Management Services, Inc.

*In re: Madison Guaranty Savings & Loan Ass'n*, Div. No. 94–1, slip op. at 1–2, 1994 WL

W. Ray Jahn, LeRoy Jahn, Little Rock, AR, Stephen Bates, Snyder, TX and Patrick O'Brien, Jacksonville, AR, for the Office of Independent Counsel and Kenneth W. Starr.

Phillip S. Anderson, Leon Holmes, and Jeanne L. Seewald, all of the Williams and Anderson law firm, Little Rock, Arkansas for American Broadcasting Companies, Inc. ("ABC").

Jess Askew III, Little Rock, Arkansas, and Kathleen A. Kirby, of the Reed, Smith, Shaw, & McClay law firm, Washington, D.C., for the Radio–Television News Directors As-

---

1. The Radio–Television News Directors Association has submitted an amicus brief in support of ABC's motion.

461299 (D.C.Cir.Sp.Div. August 5, 1994). The court additionally conferred upon Mr. Starr "prosecutorial jurisdiction to fully investigate and prosecute the subject matter . . . as hereinbefore set forth, and all matters and individuals whose acts may be related to that subject matter, inclusive of authority to investigate and prosecute federal crimes . . . that may arise out of the above described matter, including perjury, obstruction of justice, destruction of evidence, and intimidation of witnesses. *Id.* at 3.

On August 17, 1995, a federal grand jury sitting in Little Rock, Arkansas, indicted Susan H. McDougal, her former husband James B. McDougal, and then-Governor Jim Guy Tucker on charges that included conspiracy, mail and wire fraud, bank fraud, false statements, and misapplication. These charges related to a series of alleged fraudulent transactions involving Madison Guaranty Savings & Loan ("Madison") and Capital Management Services ("CMS"). The indictment alleged that Ms. McDougal knowingly submitted a false and fraudulent application for a $300,000 loan from CMS on behalf of "Master Marketing," an alleged bogus firm purportedly owned by Ms. McDougal, and then used the money for personal expenses of the McDougals, including a down payment on land in the name of Whitewater Development Corporation.

On May 28, 1996, a jury found Ms. McDougal guilty of four felony counts arising from the Master Marketing loan: (1) mail fraud in violation of 18 U.S.C. § 1341; (2) misapplication of the funds of a small business investment company ("SBIC") in violation of 18 U.S.C. § 657; (3) false entries in the records of an SBIC in violation of 18 U.S.C. § 1006; and (4) false statements to an SBIC in violation of 18 U.S.C. § 1014. *United States v. McDougal, et al.,* No. LR–CR–95–173 (E.D.Ark.). Ms. McDougal was subsequently sentenced to twenty-four months imprisonment, followed by three years probation, and ordered to pay a fine of $5,000, make restitution to the Small Business Administration in the amount of $300,000 plus interest, and perform 312 hours of community service during her probationary period. *See id.* Her appeal of that conviction and sentence is currently before the Eighth Circuit Court of Appeals.

On August 20, 1996, the date of her sentencing, the Independent Counsel served Ms. McDougal with a subpoena directing her to testify before the grand jury on September 4 and 5, 1996. Ms. McDougal responded by filing a motion to quash the grand jury subpoena or in the alternative for a protective order. This Court held a hearing on Ms. McDougal's motion on September 3, 1996. After considering the pleadings and arguments of the parties, the Court issued an immunity order pursuant to 18 U.S.C. § 6002 and denied Ms. McDougal's motion to quash or for a protective order.

On the morning of September 4, 1996, the Court was advised by the Office of Independent Counsel that Ms. McDougal refused to testify before the grand jury. The Court held a hearing that same morning to determine whether Ms. McDougal should be held in contempt. After considering statements offered by the Office of Independent Counsel, counsel for Ms. McDougal, and Ms. McDougal herself, the Court determined that Ms. McDougal should be held in civil contempt pursuant to 28 U.S.C. § 1826(a) for her refusal to testify before the grand jury. The Court ordered Ms. McDougal to report to the United States Marshal on September 9, 1996, to be detained, for no more than eighteen months, until such time as she agrees to testify, her testimony is no longer necessary, or the term of the grand jury, including any extensions, has expired.[2]

On the evening of September 4, 1996, the ABC News program "PrimeTime Live" aired portions of the interview of Ms. McDougal conducted by ABC News anchor Diane Sawyer in New York City on August 30, 1996. Following the broadcast, the Independent Counsel issued a grand jury subpoena to ABC seeking the full transcript and full videotape of the interview, including portions of the interview not broadcast. ABC thereupon

---

**2.** This Court's order finding Ms. McDougal in contempt was affirmed on appeal. *See In re: Grand Jury Subpoena,* 97 F.3d 1090, 1092 (8th Cir.1996). As of this writing, Ms. McDougal remains incarcerated pursuant to this Court's order of contempt.

filed the motion to quash now before the Court.

## II.

ABC argues that the grand jury subpoena should be quashed on the following grounds: (1) the video footage and transcript of the McDougal interview which was not broadcast is protected from disclosure by the journalist's qualified privilege under the First Amendment to the Constitution of the United States; (2) such information is protected from disclosure under the Constitution of the State of Arkansas, Article 2, § 6, the shield law of the State of Arkansas, Ark.Code Ann. § 16–85–510, and the shield law of the State of New York, N.Y.Civ. Rights Law § 79–h; and (3) the Independent Counsel failed to follow Department of Justice guidelines regarding the issuance of subpoenas to the media. The Court will address these claims in turn.

### 1.

ABC first argues that the journalist's qualified privilege under the First Amendment protects journalists from being compelled to give testimony or provide editorial material not broadcast except upon a proper showing that the matter is highly relevant, that the information is not reasonably available from other sources, and that the party issuing the subpoena has an overriding need for the information. ABC argues that the Independent Counsel cannot meet this three-prong test in order to overcome the journalist's qualified privilege and that the subpoena should therefore be quashed as to the request for information that has not been broadcast.[3]

The Court finds that ABC's assertion, of a journalist's qualified privilege under the First Amendment is foreclosed by the Supreme Court's opinion in *Branzburg v. Hayes*, 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972). In that case, the Supreme Court considered the arguments in three cases involving newspaper reporters who claimed that under the First Amendment a reporter could not be required to appear before a grand jury to testify as to information obtained in confidence without a special showing that the reporter's testimony was necessary. The reporters argued that to gather news, it is often necessary to agree to keep confidential the source of information published, and that if the reporter is forced to reveal these confidences to a grand jury, the source so identified and other confidential sources will be measurably deterred from furnishing publishable information, all to the detriment of the free flow of information protected by the First Amendment. 408 U.S. at 679–80, 92 S.Ct. at 2655–56. This asserted burden on news gathering outweighs any public interest in obtaining the information, argued the reporters, and thus requires a privileged position for them. *Id.* at 681–82, 92 S.Ct. at 2656–57.

In a five-to-four decision, the Supreme Court rejected the reporters' assertion of a privileged position with respect to grand jury proceedings, stating "[w]e are asked to create another [testimonial privilege] by interpreting the First Amendment to grant newsmen a testimonial privilege that other citizens do not enjoy. This we decline to do." *Id.* at 690, 92 S.Ct. at 2661. Noting that "the longstanding principle that 'the public ... has a right to every man's evidence,' ... is particularly applicable to grand jury proceedings," *id.* at 688, 92 S.Ct. at 2660 (citations omitted),[4] the Court concluded there was no basis "for holding that the public interest in law enforcement and in ensuring effective grand jury proceedings is insufficient to override the consequential, but uncertain, burden on news gathering that is said to result from insisting that reporters, like other citizens, respond to relevant questions put to them in the course of a valid grand jury investigation or criminal trial." *Id.* at 690–91, 92 S.Ct. at 2661. In so con-

---

3. ABC states that it has already produced to the Independent Counsel a transcript containing the portions of the interview aired during the broadcast and, in addition, a copy of a document provided by ABC to the Washington Post on September 1, 1996, which contained additional excerpts from the interview.

4. Except, the Court noted, "for those persons protected by a constitutional, common-law, or statutory privilege." *Id.* (citations omitted).

**1318**

cluding, the Court indicated its reluctance to recognize such a privilege where it was "unclear how often and to what extent informers are actually deterred from furnishing information when newsmen are forced to testify before a grand jury." *Id.* at 693, 92 S.Ct. at 2662. The Court further observed that "the First Amendment does not invalidate every incidental burdening of the press that may result from the enforcement of civil or criminal statutes of general applicability." *Id.* at 682, 92 S.Ct. at 2657.

■ With its opinion in *Branzburg,* the Supreme Court "rejected the notion that under the First Amendment a reporter could not be required to appear or to testify as to information obtained in confidence without a special showing that the reporter's testimony was necessary." *University of Pennsylvania v. Equal Employment Opportunity Commission,* 493 U.S. 182, 201, 110 S.Ct. 577, 588, 107 L.Ed.2d 571 (1990). "[T]he First Amendment [does not] relieve a newspaper reporter of the obligation shared by all citizens to respond to a grand jury subpoena and answer questions relevant to a criminal investigation, even though the reporter might be required to reveal a confidential source." *Cohen v. Cowles Media Co.,* 501 U.S. 663, 669, 111 S.Ct. 2513, 2518, 115 L.Ed.2d 586 (1991) (citing *Branzburg,* 408 U.S. 665, 92 S.Ct. 2646).

ABC argues, however, that "the result in this case is not controlled by *Branzburg* [or, it would seem, decisions of the Supreme Court that have essentially reaffirmed the holding of *Branzburg* ], but instead must be judged under the three-part test used repeatedly by courts to evaluate similar subpoenas to journalists in grand jury proceedings, as well as other contexts ..." In this regard, ABC states that "the decisive concurring opinion by Justice Powell" in *Branzburg* emphasized that a grand jury subpoena to a journalist "must be assessed on a case-by-case basis to determine whether the interest in disclosure outweigh[s] the harm to First Amendment interests." The Court rejects this argument.

It is true that the Supreme Court in *Branzburg* did not foreclose all First Amend-

ment challenges that may be asserted against a grand jury subpoena:

> [N]ews gathering is not without its First Amendment protections, and grand jury investigations if instituted or conducted other than in good faith, would pose wholly different issues for resolution under the First Amendment. Official harassment of the press undertaken not for purposes of law enforcement but to disrupt a reporter's relationship with his news sources would have no justification. Grand juries are subject to judicial control and subpoenas to motions to quash. We do not expect courts will forget that grand juries must operate within the limits of the First Amendment as well as the Fifth.

*Branzburg,* 408 U.S. at 707–08, 92 S.Ct. at 2670. In this regard, Justice Powell stated in a separate concurrence that the courts will be available to newsmen under circumstances where legitimate First Amendment interests require protection, such as where "the newsman is called upon to give information bearing only a remote and tenuous relationship to the subject of the investigation, or if he has some other reason to believe that his testimony implicates confidential source relationships without a legitimate need of law enforcement ..." *Id.* at 710, 92 S.Ct. at 2671 (Powell, J., concurring).

Contrary to ABC's assertion, Justice Powell's concurring opinion cannot be characterized as "decisive" (in the sense that is controlling) and as mandating some sort of "case-by-case" weighing process to determine any harm to First Amendment interests. Rather, Justice Powell's concurrence, when read together with the majority opinion, "must be understood to mean that where a grand jury inquiry is not conducted in good faith, or where the inquiry does not involve a legitimate need for law enforcement, or has only a remote and tenuous relationship to the subject of the investigation, then the balance of interests struck by the *Branzburg* majority may not be controlling." *In re Grand Jury Proceedings,* 5 F.3d 397, 401 (9th Cir. 1993), *cert. denied,* 510 U.S. 1041, 114 S.Ct. 685, 126 L.Ed.2d 652 (1994). "The balancing of interests suggested by Justice Powell is in the limited circumstances he mentioned,

where there is, in effect, an abuse of the grand jury function," and "[i]f Justice Powell's concurrence is read more broadly, it would be inconsistent with Justice White's [majority] opinion with which he concurred." *Id.* See also *In re Grand Jury Proceedings,* 810 F.2d 580, 585 (6th Cir.1987) (concluding that Justice Powell's concurrence in *Branzburg* is entirely consistent with the majority opinion and "does not warrant the rewriting of the majority opinion to grant a first amendment testimonial privilege to news reporters"); *In re Shain,* 978 F.2d 850, 854 (4th Cir.1992) (construing *Branzburg* as holding that "absent evidence of governmental harassment or bad faith," reporters have no privilege different from that of any other citizen not to testify about knowledge relevant to a criminal prosecution). In fact, Justice Powell specifically rejected the very type of three-part test suggested by three of the dissenters in *Branzburg* that ABC would now have this Court adopt as mandated by Justice Powell's concurrence. *Branzburg,* 408 U.S. at 710 n. *, 92 S.Ct. at 2671 n.* (Powell, J. concurring).[5]

Certainly, as ABC has pointed out, a number of federal courts have considered Justice Powell's concurrence in *Branzburg* as controlling and as creating a privilege for journalists to be judged under a three-part test.[6] Indeed, a few cases have extended such reasoning to the criminal setting. See, e.g., *In re Williams,* 766 F.Supp. 358 (W.D.Pa.1991), aff'd without opinion by equally divided court, 963 F.2d 567 (3rd Cir.1992) (en banc);

*United States v. Burke,* 700 F.2d 70 (2nd Cir.), cert. denied, 464 U.S. 816, 104 S.Ct. 72, 78 L.Ed.2d 85 (1983). Nevertheless, the majority of these cases were decided in the civil context and, in the opinion of this Court, have no bearing on cases involving federal grand jury proceedings. A three-part test such as that urged by ABC would "invite procedural delays and detours" from which the Supreme Court "has expressly stated that grand jury proceedings should be free ..." *United States v. R. Enterprises, Inc.,* 498 U.S. 292, 298, 111 S.Ct. 722, 726, 112 L.Ed.2d 795 (1991). Moreover, under the majority opinion in *Branzburg,* the courts, "when called upon to protect a newsman from improper or prejudicial questioning— would be free to balance the competing interests on their merits in the particular case." *Branzburg,* 408 U.S. at 710 n.*, 92 S.Ct. at 2671 n. * (Powell, J., concurring). A three-part test similar to the one urged by ABC, on the other hand, "would, as a practical matter, defeat such a fair balancing and the essential societal interest in the detection and prosecution of crime would be heavily subordinated." *Id.*[7] Accordingly, this Court finds more persuasive, at least in the grand jury setting, the reasoning of the Ninth Circuit in *In re Grand Jury Proceedings,* 5 F.3d 397, and the Sixth Circuit in *In re Grand Jury Proceedings,* 810 F.2d 580, both of which construed the majority opinion in *Branzburg* and Justice Powell's concurrence as consistent with each other and, thus, declined to recognize a privilege for journalists outside of the limited

5. Justice Douglas dissented separately, stating that in his view, reporters have an absolute reporter's privilege. *Id.* at 712, 92 S.Ct. at 2686 (Douglas, J., dissenting).

6. In *Williams v. American Broadcasting Companies, Inc.,* 96 F.R.D. 658, 667 (W.D.Ark.1983), the court observed in the context of a defamation action how several courts, "[n]otwithstanding the clear language of [the majority opinion]," immediately began to distinguish *Branzburg. Id.* 96 F.R.D. at 667. It was observed that "[s]ince Mr. Justice Powell's three-paragraph concurrence was needed to make up the majority in *Branzburg,* some courts felt that it was controlling, and it was read as upholding the existence of at least a qualified First Amendment privilege." *Id.* See also *J.J.C. v. Fridell,* 165 F.R.D. 513, 515 (D.Minn.1995) (noting that although the federal courts have struggled to define the breadth of the

reporter's privilege since *Branzburg,* the majority of courts, as a result of Justice Powell's concurrence, interpret *Branzburg* as establishing a qualified privilege for journalists).

7. The Court would note also that the cases relied upon by ABC conflict with recent Supreme Court decisions mentioned previously that have recognized the continued viability of *Branzburg. Cf. United States v. Cutler,* 6 F.3d 67, 70–73 (2nd Cir.1993) (acknowledging recent Supreme Court decisions on *Branzburg* and questioning its earlier decision in *United States v. Burke,* 700 F.2d 70, that there is "no legally-principled reason for drawing a distinction between civil and criminal cases" in defining the reporter's privilege). *But cf. In re Application to Quash Subpoena to National Broadcasting Co., Inc.,* 79 F.3d 346, 352–53 (2nd Cir.1996) (distinguishing *United States v. Cutler,* 6 F.3d 67).

circumstances mentioned. *See also In re Shain*, 978 F.2d 850.

The one Eighth Circuit decision cited by ABC, *Cervantes v. Time, Inc.*, 464 F.2d 986 (8th Cir.1972), *cert. denied*, 409 U.S. 1125, 93 S.Ct. 939, 35 L.Ed.2d 257 (1973), did not rule to the contrary. *Cervantes* involved a civil libel action in which the district court granted a magazine's and reporter's motion for summary judgment over the plaintiff's motion to compel disclosure of the sources for the article in question. In addressing the plaintiff's ability to learn the identity of a journalist's confidential source, the Eighth Circuit stated as follows:

> We are aware of the prior cases holding that the First Amendment does not grant to reporters a testimonial privilege to withhold news sources. But to routinely grant motions seeking compulsory disclosure of anonymous news sources without first inquiring into the substance of a libel allegation would utterly emasculate the fundamental principles that underlay the line of cases articulating the constitutional restrictions to be engrafted upon the enforcement of state libel laws. Such a course would also overlook the basic philosophy at the heart of summary judgment doctrine.

*Cervantes*, 464 F.2d at 992–93. In essentially recognizing a journalist's privilege in the circumstances before it, the court acknowledged that *Branzburg* was decided in the context of a grand jury investigation and that the Supreme Court "was not faced with and, therefore, did not address, the question whether a civil libel suit should command the quite different reconciliation of conflicting interests pressed upon us here by the defense." *Id.* at 993 n. 10. *Cervantes*, then, while perhaps relevant in the civil context, has no application to grand jury proceedings, a fact that *Cervantes* itself recognized in distinguishing *Branzburg* as a grand jury case. *See also In re Grand Jury Subpoenas Duces Tecum*, 78 F.3d 1307, 1313 n. 13 (8th Cir.) (citing *Branzburg* for the proposition that "absent 'unusual circumstances,' the First Amendment rarely offers protection from a duty to testify before a grand jury"), *cert. denied*, —— U.S. ——, 117 S.Ct. 432, 136 L.Ed.2d 331 (1996).

■ In the case at hand, ABC has not alleged that the subpoena was issued in bad faith or as a means for press harassment, that the information sought by the subpoena has a remote and tenuous relationship to the subject of the investigation, or that the Independent Counsel does not have a legitimate need for the information. The narrow circumstances mentioned in *Branzburg* and in Justice Powell's concurrence as implicating First Amendment concerns thus have no application to this case and ABC is therefore not entitled to a journalist's qualified privilege under the First Amendment.

Even were this Court to adopt the three-part test rejected by *Branzburg* but advocated by ABC, the Court would deny ABC's motion to quash. As previously noted, ABC argues that the journalist's qualified privilege under the First Amendment protects journalists from being compelled to give testimony or provide editorial material not broadcast except upon a proper showing that the matter is highly relevant, that the information is not reasonably available from other sources, and that the party issuing the subpoena has an overriding need for the information.

■ The first and third criteria suggested by ABC, that the matter is highly relevant and that the party issuing the subpoena has an overriding need for the information, must be considered in the context of grand jury proceedings. The grand jury "is an investigatory body charged with the responsibility of determining whether or not a crime has been committed," and it "can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." *R. Enterprises, Inc.*, 498 U.S. at 297, 111 S.Ct. at 726 (citation omitted). The Supreme Court has explained that "the Government cannot be required to justify the issuance of a grand jury subpoena by presenting evidence sufficient to establish probable cause because the very purpose of requesting the information is to ascertain whether probable cause exists." *Id.* (citations omitted). As noted by the Eighth Circuit, a grand jury operates with a "lack of knowledge as to just what records exist and what they will reveal" and, thus, "some exploration or fishing necessarily is inherent

and entitled to exist." *Universal Mfg. Co. v. United States*, 508 F.2d 684, 686 (8th Cir. 1975) (per curiam) (citation omitted).

With these considerations in mind, the Court concludes that the first and third criteria weigh in favor of the Independent Counsel. Ms. McDougal occupies a important role in the Independent Counsel's investigation of Madison. The grand jurors thus have a justified interest in any statements she may have made with respect to the matters under investigation. In the aired portion of the PrimeTime Live interview, Ms. McDougal alluded to matters within the Independent Counsel's jurisdiction, and there is a reasonable possibility that the non-broadcast portion of the interview may contain additional statements on these matters.

The second criteria suggested by ABC, that the information is not reasonably available from other sources, likewise weighs in favor of the Independent Counsel in that there is no other source for the information that is contained on the videotape and transcript sought by the grand jury subpoena. It may be true, as ABC argues, that Ms. McDougal has given other media interviews that are available to the Independent Counsel. Such interviews do not, however, shed any light on the specific information that may be contained on the non-broadcast videotape and transcript of the PrimeTime Live interview at issue in this case.

#### 2.

ABC next argues that the video footage and transcript of the McDougal interview which was not broadcast is protected from disclosure by the journalist's qualified privilege under the Constitution of the State of Arkansas, Article 2, § 6, the shield law of the State of Arkansas, Ark.Code Ann. § 16–85–510, and the shield law of the State of New York, N.Y.Civ. Rights Law § 79–h. ABC acknowledges that state statutory privileges are not controlling in a federal proceeding based solely on federal claims, but nevertheless argues, citing several civil cases, that this Court should look to state law in applying the First Amendment journalist's privilege.

ABC's reliance on state law privileges as giving rise to a journalist's privilege in this case is without merit since state law privileges do not apply to a federal grand jury subpoena. *See, e.g., In re Grand Jury Proceedings,* 867 F.2d 562, 564 (9th Cir.) ("federal privilege law, not state law, must be applied in criminal cases brought in federal court"), *cert. denied,* 493 U.S. 906, 110 S.Ct. 265, 107 L.Ed.2d 214 (1989); *In re Subpoena Served Upon Jorge S. Zuniga,* 714 F.2d 632, 636 (6th Cir.) ("inasmuch as the subpoenas in issue are the product of a federal grand jury investigation into alleged violations of federal criminal law, questions of privilege are governed by federal law"), *cert. denied,* 464 U.S. 983, 104 S.Ct. 426, 78 L.Ed.2d 361 (1983); *In re Grand Jury Proceedings,* 563 F.2d 577, 582 (3rd Cir.1977) (asserted privilege based on Pennsylvania constitution's speech and debate clause could not be invoked in federal grand jury proceeding). Therefore, this Court will look to federal law in determining the privilege issue.

#### 3.

For its final argument, ABC claims that the Independent Counsel failed to follow Department of Justice Guidelines regarding the issuance of subpoenas to the media. These guidelines, argues ABC, belie the Independent Counsel's argument that grand juries must be accorded virtually unlimited access to press materials, absent a showing of bad faith, in order to fulfill their investigatory role. ABC's argument on this point provides no basis for quashing the subpoena.

According to 28 U.S.C. § 594(f), the Independent Counsel "shall, *except to the extent that to do so would be inconsistent with the purposes of this chapter,* comply with the written or other established policies of the Department of Justice respecting enforcement of the criminal laws" (emphasis added). Under Department of Justice guidelines, "[n]o subpoena may be issued to a member of the news media ... without the express authorization of the Attorney General." 28 C.F.R. § 50.10(e).

The plain language of 28 U.S.C. § 594(f) makes clear that while the Independent Counsel must comply with the Department of

Justice guidelines, he is not bound to follow them where to do so would be inconsistent with the purpose of the statute. *Cf. United States v. Wilson,* 26 F.3d 142, 147 n. 1 (D.C.Cir.1994) (decision under prior version of 28 U.S.C. § 594(f)), *cert. denied,* —— U.S. ——, 115 S.Ct. 1430, 131 L.Ed.2d 311 (1995). "The Independent Counsel, as the very name suggests, is to be independent of the Attorney General." *United States v. Poindexter,* 725 F.Supp. 13, 38 (D.D.C.1989).[8] To require the Independent Counsel to obtain express authorization of the Attorney General for issuance of this subpoena would be contrary to the purpose of the statute.[9]

█ Even if the Independent Counsel was in this instance required to obtain authorization of the Attorney General, such a failure does not constitute grounds for quashing the subpoena. The Department of Justice regulations, by their own terms, confer no enforceable right on the subpoenaed person:

> Failure to obtain the prior approval of the Attorney General may constitute grounds for an administrative reprimand or other appropriate disciplinary action. The Principles set forth in this section are not intended to create or recognize any legally enforceable right in any person.

28 C.F.R. § 50.10(n). This regulation clearly establishes that ABC does not have any basis by virtue of 28 C.F.R. § 50.10(e) for challenging the Independent Counsel's failure to secure the Attorney General's permission before issuing the subpoena in question. ABC may not, therefore, use such failure as grounds for quashing the subpoena. *Cf. In re Shain,* 978 F.2d at 854 ("the regulation invoked by the reporters is of the kind to be enforced internally by a governmental department, and not by courts through exclusion of evidence"); *In re Grand Jury Proceedings,* 42 F.3d 876, 880 (4th Cir.1994)

(issuance of subpoenas requesting fee information from attorneys without first asking attorneys to voluntarily submit their fee records, as required by Department of Justice guidelines, did not constitute grounds for quashing subpoenas).

### III.

For the foregoing reasons, the Court finds that ABC's motion to quash the grand jury subpoena seeking the full transcript and videotape of the interview with Susan H. McDougal conducted by ABC News Anchor Diane Sawyer in New York City on August 30, 1996, should be and hereby is denied. ABC is ordered to fully comply with the terms of the grand jury subpoena within ten (10) days of the date of entry of this Memorandum Opinion and Order.

---

**8.** Under 28 U.S.C. § 594(a), an Independent Counsel has, with respect to matters in his or her prosecutorial jurisdiction, "full power and independent authority to exercise all investigative and prosecutorial functions and powers of the ... Attorney General."

**9.** The legislative history supports this construction of 28 U.S.C. § 594(f). *See* S.Rep. No. 101, 103d Cong. 1st Sess. 32 (1993) ("the Committee

does not intend that independent counsels comply with Department policies which would undermine their independence or hinder their mission. For example, where a Department policy requires the Attorney General's approval of a particular prosecution strategy, an independent counsel may waive compliance as inconsistent with the statute's goal of creating an 'independent' office").