**In re: SPECIAL COUNSEL INVESTIGATION**

Nos. MISC.04–296(TFH), MISC.04–297(TFH).

United States District Court, District of Columbia.

July 20, 2004.

*MEMORANDUM OPINION*

THOMAS F. HOGAN, Chief Judge.

Pending before the Court are two motions to quash subpoenas filed by journalists, Matthew Cooper and Tim Russert. The subpoenas were issued by Special Counsel Patrick Fitzgerald as part of the ongoing investigation into the potentially illegal disclosure of the identity of CIA official Valerie Plame. Specifically, *Time*

magazine reporter Matthew Cooper and NBC Washington Bureau Chief Tim Russert were asked to appear before the grand jury to testify regarding alleged conversations they had with a specified Executive Branch official. Because this Court holds that the U.S. Supreme Court unequivocally rejected any reporter's privilege rooted in the First Amendment or common law in the context of a grand jury acting in good faith, this Court denies the motions to quash.

## Background

On July 6, 2003, the *New York Times* published former Ambassador Joseph Wilson's column "What I Didn't Find in Africa," in which he charged that President Bush had "twisted" intelligence related to Iraq's nuclear program in his 2003 State of the Union Address. After the article was published, Ambassador Wilson's article and other statements he made to members of the media were extensively reported on by a number of news outlets. Motion of Non–Party Tim Russert to Quash Grand Jury Subpoena ("Russert Mot.") at 2–3.

On July 14, 2003, the *Washington Post* and other newspapers published a column written by Robert Novak in which he identified Ambassador Wilson's wife, Valerie Plame, as a CIA Officer. Specifically, the article reported that Ambassador Wilson's "wife, Valerie Plame, is an agency operative on weapons of mass destruction. Two senior administration officials told me his wife suggested sending Wilson to Niger." Russert Mot. at 3. Two months after that article was published, the *Post* reported that "two top White House officials called at least six Washington journalists and disclosed the identity and occupation of Wilson's wife." *Id.*

In December 2003, the Department of Justice appointed United States Attorney Patrick Fitzgerald as Special Counsel to investigate the allegations that one or more Executive Branch officials unlawfully disclosed the name of a purported covert CIA operative, Valerie Plame. Russert Mot. at 3. On May 21, 2004, grand jury subpoenas were issued to Mr. Cooper and Mr. Russert. Subsequent discussions between each reporter's respective attorneys and Special Counsel revealed that Mr. Fitzgerald intended to question each journalist about alleged discussions they had with a specified Executive Branch official. The specific subject matter Special Counsel will address before the grand jury is quite circumscribed, but it does delve into alleged conversations each reporter had with a confidential source. Russert Mot. at 4; Motion of Matthew Cooper to Quash Subpoena and/or for Protective Order ("Cooper Mot.") at 6–7.

Mr. Cooper and Mr. Russert base their motions to quash the grand jury subpoenas on the grounds that they violate the reporters privilege embodied in the First Amendment and common law. They also point to the D.C. Shield Law, D.C.Code Ann. § § 16–4702(1), 4703(b) (2001) and the Department of Justice's own policy statements regarding the issuance of subpoenas to members of the press, 26 C.F.R. § 50.10, as further support that the subpoenas should be quashed. In addition to the papers submitted in opposition to the motions to quash, Mr. Fitzgerald submitted an *ex parte* affidavit filed under seal. Government's Response to Motion to Quash Grand Jury Subpoena [re: Cooper] ("Gov't Opp'n to Cooper") at 1.

## Analysis

This Court need not search far to find a case which directly addresses the issues currently before it. In *Branzburg v. Hayes*, the United States Supreme Court squarely addressed the application of a reporters privilege in the context of a grand jury. *Branzburg v. Hayes*, 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972).

In that case, the Supreme Court consolidated into one opinion four cases involving journalists who were subpoenaed before grand juries and asked to testify about, *inter alia,* the identity of informants and information they had been told in confidence. The reporters objected to the subpoenas based on their rights under the First Amendment. *Id.* at 672, 92 S.Ct. 2646.

In the Court's opinion, Justice White explained that any incidental burden that testifying before a grand jury may have on the journalists was far outweighed by society's interest is law enforcement. *Branzburg,* 408 U.S. at 690–91, 92 S.Ct. 2646. The Court acknowledged the vital, constitutionally mandated role that grand juries have in the government's fundamental function of ensuring "[f]air and effective law enforcement aimed at providing security for the person and property of the individual." *Id.* It is the responsibility of every citizen to appear before a grand jury in order to assist that body with its essential tasks. *Id.* at 682, 92 S.Ct. 2646.

The *Branzburg* Court held that the First Amendment concerns should not alter news-gatherers' obligations to testify before grand juries because asking members of the press to appear before the grand juries "involve[s] no intrusions upon speech or assembly, no prior restraint or restriction on what the press may publish, and no express or implied command that the press publish what it prefers to withhold." *Id.* at 681, 92 S.Ct. 2646. The journalists were not being forbidden from continuing to use confidential sources, nor were they being asked to indiscriminately disclose the identity of their sources upon request. *Id.* at 681–82, 92 S.Ct. 2646. The Court acknowledged that the reporters' argument that the dissemination of news to the public would be diminished by forcing members of the press to testify

before grand juries was a rational concern. This fear, however, did not carry much weight with the Court which found that evidence of such an inhibiting effect of grand jury subpoenas was "widely divergent and to a great extent speculative." *Id.* at 693–94, 92 S.Ct. 2646. "We cannot accept the argument that the public interest in possible future news about crime .... must take precedence over the public interest in pursuing and prosecuting those crimes." *Id.* at 695, 92 S.Ct. 2646. The *Branzburg* Court held that there is no First Amendment privilege exempting members of the press from appearing before grand juries upon issuance of a valid subpoena. Furthermore, common law provides no such reporters privilege. *Id.* at 685, 92 S.Ct. 2646 ("At common law, courts consistently refused to recognize the existence of any privilege authorizing a newsman to refuse to reveal confidential information to a grand jury."). In the absence of a grand jury acting in bad faith or with the sole purpose of harassment, *Branzburg* makes clear that neither the First Amendment nor common law protect reporters from their obligations shared by all citizens to testify before the grand jury when called to do so.

Rather than agreeing that no reporters privilege exists in the grand jury context, Petitioners assert that *Branzburg* actually stands for the proposition that reporters enjoy a qualified privilege under the First Amendment and courts should employ a balancing test when faced with a reporter subpoenaed before a grand jury. Cooper Mot. at 8–10; Russert Mot. at 7–8. This argument fails for many reasons. The *Branzburg* Court explicitly rejected the idea that a qualified privilege exists in the grand jury context when that grand jury is acting in good faith. *Branzburg v. Hayes,* 408 U.S. 665, 703, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972). Justice White explained that a qualified privilege would not

be feasible because it would present practical and conceptual difficulties for courts such as requiring them to define the categories of journalists who qualified for the privilege—an extremely difficult task under the Court's First Amendment jurisprudence. *Id.* at 703–04, 92 S.Ct. 2646. Courts would be forced to answer questions that would embroil them in preliminarily determinations such as whether there is probable cause to believe a crime has been committed, whether there is a sufficient likelihood that the journalist has useful information, and most suspect, whether protecting society against a specific type of criminal activity is more important than protecting a reporter's rights. *Id.* at 705–06, 92 S.Ct. 2646. The Court refused to require courts to become involved in such an analysis, and therefore, expressly refused to find that the press has any qualified privilege against testifying before a grand jury.

Petitioners rest their claim that *Branzburg* stands for a qualified privilege for reporters on the assumption that the holding of in the case is controlled by Justice Powell who joined the majority opinion, but issued a separate concurrence. Cooper argues that in a 5–4 majority where a member of the majority writes a separate concurring opinion as is the case in *Branzburg*, the concurring opinion "represents the holding of the Court on the rationale that the majority opinion is not a true majority except to the extent that it accords with the views of the concurrence." Cooper Mot. at 9 n. 21. Movants further support this position by citing to various courts who have quoted Powell's concurring opinion when referencing the holding of the Branzburg Court. *See, e.g. Zerilli v. Smith,* 656 F.2d 705 (D.C.Cir.1981). This Court disagrees with that position. As Special Counsel points out "Justice Powell's concurring opinion is not a separate opinion concurring only in the judge-

ment. Justice Powell was one of five Justices joining Justice White's opinion for the court, so Justice White's opinion is a majority opinion and not a plurality opinion." Gov't Opp'n to Cooper at 8 n. 1. More importantly, it is the view of this Court that Powell's concurrence is entirely consistent with the holding of the majority in *Branzburg.*

In his concurrence, Justice Powell elaborates on the Court's statement that grand juries brought in bad faith may not harass members of the press. He clarifies that if the reporter has any reason to believe that "his testimony implicates confidential source relationship without a legitimate need of law enforcement, he will have access to the court on a motion to quash and an appropriate protective order may be entered. The asserted claim to privilege should be judged on its facts by the striking of a proper balance between freedom of the press and the obligation of all citizens to give relevant testimony with respect to criminal conduct." *Branzburg,* 408 U.S. at 710, 92 S.Ct. 2646 (Powell, J., concurring). This Court holds that the balancing test Justice Powell refers to should only be undertaken when a reporter is asked to testify before a grand jury "without a legitimate need of law enforcement." *Id.* "The balancing of interests suggested by Justice Powell is in the limited circumstances he mentioned, where there is, in effect, an abuse of the grand jury function. If Justice Powell's concurrence is read more broadly, it would be inconsistent with Justice White's opinion with which he concurred." *In re Grand Jury Proceedings,* 5 F.3d 397, 401 (9th Cir.1993). This reading is further supported by the fact that Justice Powell explicitly rejects the qualified privilege advocated by the dissent. *Branzburg,* at 710 n. *, 92 S.Ct. 2646. Although Justice Powell does refer to the necessity of a proper

balance of the societal interests involved, "it is clear that he is actually referring to the availability of judicial case-by-case screening out for Bad faith 'improper and prejudicial' interrogation. Indeed this court has already so interpreted Justice Powell's opinion in *In re Possible Violations of 371, 641, 1503*, 184 U.S.App.D.C. 82, 564 F.2d 567 (1977)." *Reporters Comm. for Freedom of Press v. American Telephone & Telegraph Co.*, 593 F.2d 1030, 1061 n. 107 (D.C.Cir.1978); *see also In re Grand Jury Proceedings*, 810 F.2d 580, 585 (6th Cir.1987) ("Justice Powell's concurring opinion is entirely consistent with the majority opinion, and neither limits nor expands upon its holding, but that, instead, it responds to what Justice Powell perceived as an unwarranted characterization of that holding by Justice Stewart."); *In re Grand Jury 95–1*, 59 F.Supp.2d 1, 14 (D.D.C.1996) ("[T]his Court finds that Justice Powell's concurring opinion is consistent with Justice White's majority opinion in *Branzburg*. Both opinions found that no testimonial privilege exists for newsmen which does not exist for other citizens.")

Only two federal circuits courts have directly addressed the issue of a reporter's privilege in the grand jury context, and both of those courts held that there was no privilege. *See In re Grand Jury Proceedings*, 810 F.2d 580 (6th Cir.1987); *Lewis v. United States*, 517 F.2d 236 (9th Cir.1975). One district court held that there is a common law qualified newsman's privilege in the grand jury context. *In re Grand Jury Subpoena of Williams*, 766 F.Supp. 358 (W.D.Pa.1991) *aff'd* 963 F.2d 567 (3rd Cir.1992) (en banc) (dispositive order without discussion of merits)[1]. This Court

declines to follow that case "on the ground that it directly conflicts with the Supreme Court's holding in *Branzburg*." *In re Grand Jury Proceedings*, 5 F.3d 397, 403 (9th Cir.1993). Other circuits have demonstrated adherence to *Branzburg's* assertion that there is no reporter's privilege except in the face of a grand jury acting in bad faith. *See In re Grand Jury Proceedings*, 5 F.3d 397, 401–03 (9th Cir.1993) (court denied motion to quash a subpoena served on a "scholar" based on the reasoning of *Branzburg* holding there is no privilege in the absence of bad faith); *In re Grand Jury 87–3 Subpoena Duces Tecum*, 955 F.2d 229, 232–34 (4th Cir.1992) (subpoena seeking corporate records upheld after applying *Branzburg* standard); *United States v. Smith*, 135 F.3d 963, 968–70 (5th Cir.1998) (reporters subpoenaed and not protected from the subpoena based on *Branzburg* analysis).

The Circuit Court for the District of Columbia has upheld the holding of *Branzburg*. *Reporters Comm. for Freedom of Press v. American Telephone & Telegraph Co.*, 593 F.2d 1030, 1061 (D.C.Cir.1978) ("The Court in *Branzburg* determined that Good faith criminal investigation interests Always override a journalist's interest in preserving the secrecy of his sources."); *In re Possible Violations of 18 U.S.C. 371, 641, 1503*, 564 F.2d 567, 571 (D.C.Cir.1977) (concluding that *Branzburg* established a "newsman can claim no general immunity, qualified or otherwise, from grand jury questioning. On the contrary, like all other witnesses, he must appear and normally must answer. If the grand jury's questions are put in bad faith or for the pur-

---

1. The *Williams* court supported its holding by explaining that the adoption of Federal Rule of Evidence 501 required privileges to be governed by the principles of common law. It then applied a reporters privilege which the Third Circuit had created in a *civil* case to the grand jury context. 766 F.Supp. at 367–68. This Court finds that the application of a reporters privilege applicable in the civil context to a case involving a grand jury subpoena is flawed and directly inconsistent with the Supreme Court's holding in *Branzburg*.

pose of harassment, he can call on the courts for protection."). The D.C. District court has followed suit. *In re Grand Jury 95–1*, 59 F.Supp.2d 1, 10–15 (D.D.C.1996) (adopting *Branzburg's* holding and analysis in rejecting journalist's motion to quash a grand jury subpoena).

It is true that some courts have chipped away at the holding of *Branzburg* by ruling that a court shall apply a qualified privilege in certain limited contexts. These courts have done so by carving out various factual scenarios different than those presented in *Branzburg* and announcing that a judge should apply a balancing test. *United States v. Ahn*, 231 F.3d 26 (D.C.Cir.2000) (criminal case addressing "breach of contract" issue); *United States v. LaRouche Campaign*, 841 F.2d 1176 (1st Cir.1988) (pre-trial criminal proceeding); *United States v. Burke*, 700 F.2d 70 (2d Cir.1983) (criminal trial); *Zerilli v. Smith*, 656 F.2d 705 (D.C.Cir.1981) (civil proceeding); *United States v. Hubbard*, 493 F.Supp. 202 (D.D.C.1979) (criminal case); *Carey v. Hume*, 492 F.2d 631 (D.C.Cir.1974) (civil proceeding); *Baker v. F & F Investment*, 470 F.2d 778 (2d Cir. 1972) (civil action). In all of those cases noted by the petitioner, there was no Supreme Court precedent for the factual situation they were faced with indicating how they must rule. This court does not share that luxury. Whatever extent lower courts around the country have eroded the periphery of the *Branzburg* opinion, the core of the opinion stands strong. The facts of this case fall entirely within that core—a reporter called to testify before a grand jury regarding confidential information enjoys no First Amendment protection. In the three decades since that opinion was penned, the Supreme Court has chosen not to issue a ruling contradicting that holding. Therefore, neither shall this Court.

Petitioner Russert attempts one last time to steer the court away from the inevitable holding in Branzburg by arguing that the case did not deal with confidential sources, and that other courts have identified confidential sources as unique situations. (Russert Tr. at 15–20.) Russert argues that the relevant distinction is not between grand juries and all other judicial proceedings. Rather, petitioner submits, the relevant distinction is between cases when the government seeks to question a journalist about a confidential source and "those cases—like *Branzburg*—in which a journalist, like any other citizen, is obliged to testify about criminal conduct that he observed." Reply Memorandum of Points and Authorities in Support of Non–Party Tim Russert's Motion to Quash Grand Jury Subpoena at 5. "This Court agrees with the Independent Counsel that the line should be drawn at the nature of the proceeding; not depending on how the reporter obtained the information at issue." *In re Grand Jury 95–1*, 59 F.Supp.2d 1, 13 (D.D.C.1996). Petitioner's interpretation of *Branzburg* is again inaccurate. Although some of the reporters in *Branzburg* did observe criminal conduct, one of the reporters did not observe any criminal conduct and was asked to testify about information he had learned from confidential sources. *Branzburg*, 408 U.S. at 672–73, 92 S.Ct. 2646. More importantly, the entire *Branzburg* opinion is laced with references to confidential sources and Justice White makes clear that the "heart of the [reporters'] claim is that the burden on news gathering resulting from compelling reporters to disclose confidential information outweighs any public interest in obtaining the information." *Id.* at 681, 92 S.Ct. 2646. The *Branzburg* opinion's holding that there is no First Amendment or common law reporters privilege in the grand jury context plainly · encompasses

journalists asked to reveal confidential sources and information.

Two other arguments proffered by the movants merit a response. First, movants point to the District of Columbia Shield Law, D.C.Code Ann. §§ 16–4702—4703 (2001), as a secondary basis for the Court to quash the journalists' subpoenas. The Court disagrees. The federal law of privilege exclusively governs evidentiary privileges in cases arising under federal substantive law in federal court. Fed.R.Evid. 501. "Whatever may be its force in the context of a civil common law action in a court of the District of Columbia . . . . the D.C. statute is inapplicable here. Congress has never enacted a federal counterpart to the D.C. Shield Law." *Lee v. United States Dep't of Justice,* 287 F. Supp 2d 15, 17 (D.D.C.2003). Second, Cooper and Russert assert that the subpoenas must be quashed because the Department of Justice Guidelines for issuing subpoenas to news media ("DOJ guidelines") were not met. 26 C.F.R. § 50.10. This Court is not convinced that the DOJ guidelines vest any right whatsoever in movants [2]. Assuming, *arguendo,* that the DOJ guidelines did vest a right in the movants in these cases, this Court holds that the DOJ guidelines are fully satisfied by the facts of this case as presented to the court in the *ex parte* affidavit of Patrick Fitzgerald. Furthermore, assuming *arguendo* that this Court were to determine that the journalists did possess a qualified privilege—a holding which this Court has explained is simply not supported by case law—the *ex parte* affidavit has also established that Special Counsel would be able to meet even the most stringent of balancing tests.

The information requested from Mr. Cooper and Mr. Russert is very limited, all available alternative means of obtaining the information have been exhausted, the testimony sought is necessary for the completion of the investigation, and the testimony sought is expected to constitute direct evidence of innocence or guilt. To be clear, this Court holds that Cooper and Russert have no privilege, qualified or otherwise, excusing them from testifying before the grand jury in this matter. There have been no allegations whatsoever that this grand jury is acting in bad faith or with the purpose of harassing these two journalist. Therefore, under the holding in *Branzburg* and its progeny, Mr. Cooper and Mr. Russert must fulfill their obligation, shared by all citizens, to answer a valid subpoena issued to them by a grand jury acting in good faith. An appropriate order will accompany this opinion.

### *ORDER*

Pending before the Court are "Motion of Matthew Cooper to Quash Subpoena and/or for Protective Order" and "Motion of Non–Party Tim Russert to Quash Grand Jury Subpoena." For the reasons stated in the accompanying Memorandum Opinion, it is hereby

**ORDERED** that both motions are **DENIED.**

**SO ORDERED.**

---

**2.** See 28 C.F.R. § 50.10(n) ("The principles set forth in this section are not intended to create or recognize any legally enforceable right in any person."); *In re Grand Jury Subpoena Am. Broad. Cos., Inc.,* 947 F.Supp. 1314, 1322 (E.D.Ark.1996) (denying television network's request to quash grand jury subpoena on the basis that DOJ guidelines were not fulfilled because DOJ "regulations, by their own terms, confer no enforceable right on the subpoenaed person.").