Jon R. GRUNSETH, Plaintiff,

v.

MARRIOTT CORPORATION, Defendant.

Civ. A. No. 93–1101 (GK).

United States District Court,
District of Columbia.

Nov. 16, 1994.

Craig Ellis, Ellis & Prioleau, Silver Spring,
MD, for plaintiff.

James Melvin Mesnard, Seyfarth, Shaw,
Fairweather & Geraldson, Washington, DC,
for defendant.

## 334

### MEMORANDUM—ORDER

KESSLER, District Judge.

This matter comes before the Court on the Motion of the Minneapolis Star Tribune (the "Tribune") and several of its employees, none of whom are parties to this case, to Quash Subpoenas served on them by Plaintiff and for a Protective Order. Upon consideration of the Motion, Plaintiff's Opposition, and the Replies filed, separately, by the Movants and the Defendant, the Court concludes that the Motion should be granted, for the following reasons.

Plaintiff, Jon R. Grunseth, a former candidate for governor of the State of Minnesota in 1990, is suing the Defendant Marriott Corporation for breach of implied contract, negligence, and invasion of privacy. During the 1990 gubernatorial campaign, the Tribune published a story detailing a long-standing, albeit sporadic, sexual relationship, between Plaintiff and Tamara Taylor. Plaintiff consented to a videotaped interview with reporters from the Tribune in which he admitted to having had such a relationship with Ms. Taylor in the past but vigorously denied having stayed with her at the J.W. Marriott hotel in Washington, D.C. on the night of July 12, 1989, a time when he was married and his wife was pregnant. Plaintiff claims that publication of Ms. Taylor's charges forced him to withdraw from the governor's race and resulted in his being fired as Vice-President of Ecolab.

Plaintiff filed the present lawsuit on May 13, 1993 basing his claim against Marriott on the fact that the hotel disclosed his hotel registration records and receipts to the Tribune's reporter, Paul McEnroe, who then used such documents as corroboration of Ms. Taylor's charges. One year later, Plaintiff moved to amend his complaint to add the Tribune and McEnroe as defendants. That motion was denied on grounds of untimeliness given the degree of discovery and preparation which had already taken place in the instant lawsuit.

Plaintiff now seeks to subpoena the Tribune, its Vice President and General Counsel, its Executive Editor, and two reporters including the writer of the story at issue Mr. McEnroe, to produce the actual Marriott Hotel bill which was supposedly shown to him during his interview, as well as all notes, records, photographs, and documents either utilized by or in the possession of the two reporters conducting the interview.

Plaintiff's efforts are precluded by the First Amendment to the Constitution as well as statutes in both the District of Columbia and the State of Minnesota.

In *Branzburg v. Hayes,* 408 U.S. 665, 707, 92 S.Ct. 2646, 2669–70, 33 L.Ed.2d 626 (1972), the Supreme Court held that even though a journalist does not have an absolute privilege under the First Amendment to refuse to disclose confidential sources to a grand jury conducting a criminal investigation, some First Amendment protection must be accorded to the press and its newsgathering activities.

*Branzburg* has since been interpreted by our D.C. Circuit in *Zerilli v. Smith,* 656 F.2d 705, 710–711 (D.C.Cir.1981). The rationale of that case is both apt and eloquent:

> The First Amendment guarantees a free press primarily because of the important role it can play as 'a vital source of public information.'... 'The press was protected so that it could bare the secrets of government and inform the people.'... Without an unfettered press, citizens would be far less able to make informed political, social, and economic choices. But the press' function as a vital source of information is weakened whenever the ability of journalists to gather news is impaired. Compelling a reporter to disclose the identity of a source may significantly interfere with this news gathering ability ...

*Id.* (citations omitted)

"Compelling a reporter to disclose the identity of a source" is precisely what Mr. Grunseth seeks to do at this juncture. Despite all his efforts to argue to the contrary, he is essentially trying to find out who, at the Marriott Hotel, provided his hotel bill and receipt to the Tribune and its reporters. He concedes as much when, in his Opposition to the Motion to Quash, he says:

Plaintiff Grunseth seeks to take the depositions of the Tribune, McEnroe, Short, and Joel Kramer in order to explore, within constitutional boundaries, the circumstances under which the above-named parties obtained Grunseth's hotel receipt. Such exploration is *calculated to lead to facts which will establish* Grunseth's causes of action against Defendant Marriott Corporation, as well as establishing *potentially negligent or unlawful conduct on the part of the Tribune, its reporters and editors.*

What Plaintiff is really trying to do, through the use of discovery in the present lawsuit, is obtain the sources relied upon by the Tribune reporters so that that information can be used against them in the lawsuit he has recently filed in Superior Court against those reporters and the Tribune itself.

Plaintiff does not deny that he now has a copy of the actual hotel bill itself—see Exhibit G attached to Marriott's Reply Memorandum in Support of the Motion to Quash. Nor, as Marriott argues in its Reply Memorandum and as Plaintiff apparently concedes (see Grunseth Deposition pp. 233–234), can it be claimed that anything in that hotel bill actually corroborates any of the facts charged by Tamara Taylor.

For example, the hotel receipt does not indicate that any of the room service or bar charges were for more than one person (indeed the modest amounts would suggest that they were not), or that more than one person was staying in the room with Mr. Grunseth. Obviously the hotel receipt does not indicate what activities did or did not take place in the hotel room.

In short, it is perfectly clear that the only reason the hotel receipt is being sought, as well as the other documents requested, is to uncover the source or sources from which Mr. McEnroe obtained them, so that Plaintiff can try to establish liability against Marriott in this lawsuit, and against the Tribune and its reporters in the lawsuit filed in Superior Court.

This is precisely the kind of newsgathering activity protected by the First Amendment, especially when the issue arises in a civil, rather than a criminal, context. As Judge Wright noted in *Zerilli:*

> Although *Branzbe[u]rg* may limit the scope of the reporter's First Amendment privilege in criminal proceedings, this circuit has previously held that in civil cases, where the public interest in effective criminal law enforcement is absent, that case is not controlling ... In general, when striking the balance between the civil litigant's interest in compelled disclosure and the public interest in protecting a newspaper's confidential sources, we will be mindful of the *preferred position* of the First Amendment and the importance of a vigorous press.... Thus, in the ordinary case the civil litigant's interest in disclosure should yield to the journalist's privilege.

656 F.2d at 711–712. (citations omitted) (emphasis added).

Plaintiff has not demonstrated that the facts of this case overcome the clear preference for First Amendment protections stated by our Court of Appeals. While the information sought would be relevant, and therefore admissable if obtained in other ways, to Plaintiff's case against Marriott, it certainly does not go to the heart of his claims and is not essential to establish liability. Marriott has spelled out at great length in its Reply Memorandum the difficulties that Plaintiff will have, assuming he can prove that Marriott was responsible for producing the hotel receipt to the Tribune reporters, demonstrating a causal connection between such actions and the publication of the story and subsequent firing of Mr. Grunseth.

Nor has Plaintiff demonstrated, other than in conclusory language, that he has exhausted all other reasonable sources for obtaining the information.

Nor is this a case (as opposed to the Superior Court case), where the reporter is a party and where, therefore, "the equities weigh somewhat more heavily in favor of disclosure", *Zerilli v. Smith, supra,* 656 F.2d at 714.

Finally, Plaintiff has demonstrated no overwhelming or compelling societal interest in overcoming the presumption favoring

First Amendment protections for a reporter's sources. This is not a case involving election fraud, or governmental corruption, or any other issue that affects the fundamental validity of the electoral process. Rather, it is a suit for damages by a gubernatorial candidate who feels very wronged by revelations which surfaced during the campaign about his private life. While one can feel sympathy for any individual who has to endure public humiliation and whose family has to suffer public embarrassment, such results have—for good or ill—become a well-known hazard of public service.

For all the foregoing reasons the Court concludes that the subpoenas must be quashed because the information sought to be produced falls within the ambit of the First Amendment's protection.

█ The Tribune and its employees also rely upon District of Columbia and Minnesota statutes which protect newsgathering activities of reporters. While the Court does not need to reach those issues, in light of its ruling on the Constitutional arguments, it will briefly address them, in any event.

In 1992, largely in response to the decision in *Wheeler v. Goulart,* 593 A.2d 173 (D.C. 1991), the District of Columbia enacted the Free Flow of Information Act of 1992, D.C.Code § 16–4701–4704.

This statute provides, in Section 4702, an absolute prohibition against compelling testimony regarding

(1) The source of any news or information procured by the person while employed by the news media and acting in an official news gathering capacity, whether or not the source has been promised confidentiality; or

(2) Any news or information procured by the person while employed by the news media in the course of pursuing professional activities that is not itself communicated in the news media ...

Section 4704 further provides that

The publication by the news media or the dissemination by a person employed by the news media of a source of news or information, or a portion of the news or information, procured while pursuing professional activities shall not constitute a waiver of the protection from compelled disclosure that is contained in section 16–4702.

█ In sum, the D.C. statute accords total protection to news sources, whether confidential or not, and whether disclosed to others or not. Thus, by its clear wording, the statute applies to and covers the present case and gives an absolute privilege for all news sources.

The statute does provide, in Section 4702(2), that the protection accorded "news or information ... not itself communicated in the news media" may be withdrawn if the court finds by clear and convincing evidence that the news or information sought "is relevant to a significant legal issue", that it "could not, with due diligence, be obtained by any alternative means", and that there is an "overriding public interest in the disclosure".

Thus, it can be seen that the criteria for applying the conditional privilege for news or information set forth in the District's Free Flow of Information Act closely track those set forth in *Zerilli.* As the analysis, *supra,* under *Zerilli* demonstrates, Plaintiff has not established by clear and convincing evidence that there is an "overriding public interest in the disclosure".[1]

Therefore, neither the "sources" which are absolutely privileged, nor the "news or information" which is conditionally privileged, may be obtained under the District of Columbia Free Flow of Information Act.

█ The Minnesota Statute, Minn.Stat. §§ 595.022–.025 (1993), is somewhat narrower than the D.C. statute and focuses on providing protection for sources of information and the confidential relationship between the source and the newsgatherer (§ 595.022). It provides that

[n]o person ... shall be required by any court ... to disclose ... the person or means from or through which information

---

1. The Court has also found that Plaintiff has not demonstrated by clear and convincing evidence that the "information could not, with due diligence, be obtained by any alternative means".

was obtained, or to disclose any unpublished information procured by the person in the course of work or any of the person's notes, memoranda, recording tapes, film or other reportorial data which would tend to identify the person or means through which the information was obtained (§ 595.023).

 In order to overcome these prohibitions, the person seeking disclosure must establish by clear and convincing evidence "that there is probable cause to believe that the source has information clearly relevant to" a felony, "that the information cannot be obtained by any alternative means or remedy less destructive of first amendment rights" and "that there is a compelling and overriding interest requiring the disclosure where the disclosure is necessary to prevent injustice" (§ 595.024(2)).

Again, it is apparent that the conditions set forth in the Minnesota law for overriding the statutory protections closely track the criteria set forth in *Zerilli*.

There can be no question that all three of these conditions have not been satisfied. First and foremost, the information being sought does not relate to a criminal offense. Second, the Court has already ruled that there is not clear and convincing evidence that the information cannot be obtained by any alternative means or remedy less destructive of first amendment rights. Finally, the Court does not find that disclosure is required "to prevent injustice" for the reasons already discussed.

Thus, under both District of Columbia and Minnesota statutes, the information sought by the Plaintiff is fully protected.[2]

For all the foregoing reasons, the Motion must be granted.

Wherefore, it is this 16th day of November, 1994, hereby

ORDERED, that the Motion of Star Tribune *et al.* to Quash and For A Protective Order is granted; and it is

ORDERED, that the subpoenas served upon the Star Tribune and its attorney, Randy Lebedoff, its Executive Editor Joel Kramer, and its two reporters Paul McEnroe and Allen Short, are hereby quashed; and it is further

ORDERED, that the Plaintiff is prohibited from seeking testimony or the production of documents concerning the newsgathering and editorial activities of these individuals and entities.

---

2. Plaintiff urges that, because there is a conflict between the two statutes, this Court must make a "choice of law" determination. In making that determination, the "governmental interest" analysis should be applied, which in Plaintiff's view compels the conclusion that Minnesota law should apply. See *Rong Yao Zhou v. Jennifer Mall Restaurant*, 534 A.2d 1268 (D.C.1987).

Plaintiff is correct that the District of Columbia does apply the "governmental interest" analysis in a conflict of laws situation, but this Court perceives no conflict. Plaintiff argues that Minnesota law allows waiver of the confidentiality privilege and that it has been waived in this case. While the Minnesota statute does not contain the explicit anti-waiver language contained in D.C.Code § 16–4704, it is simply silent on the issue, and no controlling case law has been decided on this point. Consequently, this Court sees no reason to create a "conflict" where none appears to exist.