In re GRAND JURY 95–1 Subpoena
Duces Tecum to Robert Anderson,
Don Hewitt, Mike Wallace.

Misc. Nos. 96–317(JGP), 96–
323(JGP), 96–324(JGP).

United States District Court,
District of Columbia.

Dec. 27, 1996.

**MEMORANDUM ORDER***

JOHN GARRETT PENN, Chief Judge.

This matter comes before the Court on the **Motion of Robert Anderson to Quash A Grand Jury Subpoenas** *Duces*

*Tecum* issued by Independent Counsel Donald Smaltz for the United States. The subpoenas, if enforced, would require three correspondents of Columbia Broadcasting Systems [hereinafter CBS] to produce testimony and documents concerning the production of a 60 MINUTES segment entitled "F.O.B.? Billionaire Businessman Don Tyson Explains His Relationship With Bill Clinton" [hereinafter the segment] which was broadcast on September 25, 1994. The subpoenaed parties also request that their motion and memorandum be unsealed. The Independent Counsel opposes the motion. For the reasons set forth below, the Court declines to unseal the papers and denies the motion to quash.

### Background

Alphonso Michael Espy [hereinafter Secretary Espy or Mike Espy], served as Secretary of Agriculture from January 12, 1993, until his resignation on December 31, 1994. His resignation apparently was the result of news reports alleging that he violated federal laws while in office.

On or about August 8, 1994, Attorney General Janet Reno filed an application with the Independent Counsel Division of the United States Court of Appeals for the District of Columbia Circuit requesting appointment of an Independent Counsel, pursuant to 28 U.S.C. § 592(c)(1), to investigate whether Secretary Espy has violated federal criminal laws. The Attorney General referenced press reports which alleged that Tyson Foods, Inc. was receiving lenient treatment from the Department of Agriculture on pending regulatory issues and that Secretary Espy had accepted gifts from Tyson Foods in violation of the anti-gratuity provisions of the Meat Inspection Act, 21 U.S.C. § 622.

On September 9, 1994, the Independent Counsel Division of the Court of Appeals granted the Attorney General's application and appointed Donald C. Smaltz as Inde-

---

* The original of this Memorandum Order was filed Under Seal on December 27, 1996. It has now been redacted for publication. A separate but identical Memorandum Order is filed in each matter.

pendent Counsel to investigate the allegations against Secretary Espy. The Court conferred upon Mr. Smaltz:

> full power, independent authority, and jurisdiction to investigate to the maximum extent authorized by the Independent Counsel Reauthorization Act of 1994 whether [Secretary Espy] has committed a violation of any federal criminal law . . . relating in any way to the acceptance of gifts by him from organizations or individuals with business pending before the Department of Agriculture.

*In re Alphonso Michael (Mike) Espy*, Div. No. 94–2 (D.C.Cir. Sept. 9, 1994) [hereinafter *Order*].

The Court also vested the Independent Counsel with maximum authority to investigate other individuals, organizations and a broad range of offenses which arise from the investigation. The Court specifically gave the Independent Counsel authority to:

> investigate other allegations or evidence of violation of any federal criminal law, other than a Class B or C misdemeanor infraction, by any organization or individual developed during the Independent Counsel's investigation referred to above and connected with or arising out of that investigation.

> . . . .

> The Independent Counsel shall have jurisdiction and authority to seek indictments and to prosecute any organizations or individuals involved in any of the matters described above, who are reasonably believed to have committed a violation of any federal criminal law arising out of such matters, including organizations or individuals who have engaged in an unlawful conspiracy or who have aided or abetted any criminal offense.

*Order* at 2. *See also In re Alphonso Michael (Mike) Espy*, 317 U.S.App.D.C. 25, 32, 80 F.3d 501, 508 (1996).

The Independent Counsel subsequently learned that *60 MINUTES* had conducted extensive interviews with Don Tyson, the majority shareholder of Tyson Foods, and James Blair, counsel for Tyson Foods, among other representatives of Tyson Foods, in preparation for the production of the segment. The Independent Counsel asserts that the subject of the interviews is within his jurisdiction because it examines the possible exchange of gratuities to the Secretary of Agriculture for preferential regulatory treatment for Tyson Foods. (Declaration of Advisory and Assistant Independent Counsel Henry Rossbacher at 29–30[hereinafter Rossbacher Declaration].)[1]

On October 29, 1996, the Independent Counsel served the instant subpoenas for testimony and documents on three CBS correspondents who were involved in the production of the *60 MINUTES* segment. The correspondents are Robert Anderson, Don Hewitt, and Mike Wallace [hereinafter the journalists]. Robert Anderson produced the segment. Don Hewitt is the Executive Producer of *60 MINUTES*. Mike Wallace was the on-air correspondent for the segment.

The subpoenas generally seek testimony and documents, audiotape and videotape recordings, and written transcripts of recordings involving communications between representatives of CBS and at least twelve named individuals and entities concerning the preparation of the segment.

The journalists also moved to stay enforcement of the subpoenas pending resolution of the motion to quash. On November 13, 1996, the Court granted the motion to stay until the motion to quash is resolved.

---

1. Henry Rossbacher submitted two declarations on behalf of the Independent Counsel; one was submitted *ex parte*. When the Court refers to the "Rossbacher Declaration" it is not citing the *ex parte* submission.

## Analysis

### I. Motion To Quash Subpoenas

The witnesses base their motion to quash on the following grounds: (1) the Independent Counsel has failed to comply with the requirements of the Department of Justice's guidelines [hereinafter guidelines or regulations] for issuing subpoenas to members of the news media; (2) compliance with the subpoenas would be unreasonable and oppressive within the meaning of Federal Rule Of Criminal Procedure 17(c); (3) enforcement of the subpoenas is prohibited by the journalists' common law and First Amendment privilege; (4) the subpoenas exceed the limited scope of the Independent Counsel's authority; and (5) the Independent Counsel's office is improperly using the subpoenas to gather evidence to prepare for trial on pending indictments.. (Motion and Memorandum at 1–2.)

The Court will address each of these arguments in turn.

### A. The Independent Counsel Has Complied With The Requirements Of The Department Of Justice's Guidelines For Issuing Subpoenas To News Media

 Congress requires the Independent Counsel to generally comply with Department of Justice policies. 28 U.S.C. § 594(f)(1) (1996) ("An independent counsel shall, except to the extent that to do so would be inconsistent with the purposes of this chapter, comply with the written or other established policies of the Department of Justice respecting enforcement of the criminal laws.") *See also* 28 C.F.R. § 600.1(f) ("An independent counsel shall, except where not possible, comply with the written or other established policies of the Department of Justice respecting enforcement of the criminal laws.")

The Department of Justice has policies which are intended to protect the news media from forms of compulsory process which might impair the news gathering and editorial functions of the media. 28 C.F.R. § 50.10 ("[T]he prosecutorial power of the government should not be used . . . [to] . . . impair[ ] a reporter's responsibility to cover as broadly as possible controversial public issues. This policy statement is thus intended to provide protection for the news media from forms of compulsory process, whether civil or criminal, which might impair the news gathering function.") *See also U.S. Attorney's Manual* § 9–2.161. The regulations also recognize the need to balance the competing interests of the freedom of the press with the Department of Justice's obligation to fairly administer justice and to effectively enforce the laws. *See* 28 C.F.R. § 50.10.

The regulations, in part, require prosecutors to (1) make reasonable attempts to obtain the information sought from alternative sources before considering the issuance of a subpoena to a member of the press; (2) pursue negotiations with the media during which the government must make clear its needs and its willingness to be sensitive to the media's interests; and (3) obtain express authorization from the Attorney General for issuance of the subpoena. *See* 28 C.F.R. § 50–10(a)–(f). The regulations also require prosecutors to make known to the Attorney General: (a) that the request is supported by reasonable grounds to believe that a crime has occurred; (b) that the information sought would tend to establish guilt or innocence and thus is essential to a successful investigation; (c) if the subpoena is not limited to verification of the accuracy of published information, then the government must show that exigent circumstances exist; and (d) that the subpoenas concern a limited subject matter, cover a reasonably limited time period, and do not require production of large volumes of unpublished material. *Id.*

The Court agrees with the journalists' position that these regulatory requirements apply to this case. The instant subpoenas seek news gathering material and some would argue that compulsory

process could impair the news gathering and editorial functions of the news media. The Court finds, however, that to the extent possible the Independent Counsel has complied with the Department of Justice's policies and regulations concerning issuance of subpoenas to the news media. Accordingly, the subpoenas should not be quashed on this basis.

To be sure, the regulations state that "[n]o subpoena may be issued to any member of the news media" without the express authorization of the Attorney General. 28 C.F.R. § 50.10(e). But the journalists concede that "[g]iven the nature of the Independent Counsel's office and function, we do not contend that the authorization of the Attorney General is required; the reasonable reading under the circumstances is that the Independent Counsel, who stands in the shoes of the Attorney General, must himself authorize the subpoenas." (Motion and Memorandum at 7, n. 3.) Thus, the gravamen of the journalists' complaint is not that the Attorney General has not authorized the issuance of the subpoenas; but that the Independent Counsel does not appear to have personally authorized their issuance. The record reflects that the Independent Counsel has personally authorized the issuance of the instant subpoenas. The Court credits the Independent Counsel's representation at oral argument on the motion that "the Regulations were reviewed at the Independent Counsel's office," that the "Independent Counsel personally reviewed the issuance of the subpoenas ... and, indeed, himself directed that the subpoenas be issued." (TR. at 17 and 30.)[2] These representations satisfy the Court that the Office of the Independent Counsel has obtained adequate authorization for issuance of the subpoenas.

The Court also finds that the Independent Counsel has made reasonable attempts to obtain the information sought

from alternative sources before considering the issuance of the subpoenas to the journalists. The Independent Counsel has submitted to the Court *ex parte* materials which indicate that the Independent Counsel has explored alternative sources for the information sought. Also, during the hearing on this motion the Independent Counsel represented to the Court that the parties who were the subjects of the segment, including Don Tyson, previously were subpoenaed for any recordings and tapes they may have made during the production of the segment. The Independent Counsel further represented that not "until [he has] the ... field tapes, what was actually recorded in the cameras by *60 MINUTES* of both audio and video ... will [he] be able to see and learn the complete substance of what was said." (TR. at 26.) The only other possible source of information concerning what was said during production of the segment is Mr. Don Tyson from whom the Independent Counsel already has subpoenaed his own recordings. Moreover, Mr. Tyson "has asserted the Fifth Amendment[,] ... [and][h]e's not available to [the Independent Counsel] as a witness." (TR. at 24.) Indeed, CBS is the only source for some of the materials sought. No other individual or entity could possibly have possession of the documents and non-broadcast material which CBS generated in the production of the segment.

The journalists also argue that the government did not attempt to negotiate with CBS concerning the government's needs and how the government might accommodate the journalists' interests. The journalists contend that "[t]he Independent Counsel's Office has been unwilling to discuss either the remarkably broad scope of the subpoenas or the reasons for their issuance, unless CBS agrees that any such conversation will be off-the-record." (Motion and Memorandum at 3.) The Court

---

2. The transcript of oral argument on the instant motion has not been finalized and remains in rough draft.

finds, however, that the Independent Counsel did attempt to pursue negotiations. The Independent Counsel contacted counsel for the witnesses. (Opposition at 25.)[3] But the journalists refused to discuss the matter with the Independent Counsel because the journalists insisted that talks be on the record. (Opposition at 25.)

■ The Court finds that the Independent Counsel's efforts to avoid negotiations without a confidentiality agreement were reasonable and not in bad faith. It is in the best interests of the grand jury's investigation that talks concerning the terms and scope of the subpoenas remain confidential. Indeed, Federal Rule of Criminal Procedure 6(e) prohibits disclosure of "matters occurring before the grand jury." Also, Rule 302 of the United States District Court for the District of Columbia requires that before matters occurring before the grand jury may be made public the Court must find that "continued secrecy is not necessary to prevent disclosure of matters occurring before the grand jury." To be sure, witnesses are not bound by the secrecy requirements of Rule 6(e). Nevertheless, the Court finds that it is incumbent upon the Independent Counsel to at least attempt to keep confidential all matters occurring before the grand jury, including negotiations over the terms and scope of the instant subpoenas.

The journalists next allege that the Independent Counsel failed to satisfy the requirement of the regulations that the subpoenas are supported by reasonable grounds to believe that a crime has occurred. The Court finds to the contrary. Specifically, Advisory and Assistant Independent Counsel Henry Rossbacher represents that "the statements of these witnesses during the interviews that led up to this broadcast bear a direct relationship to the investigation and, in some part, may well constitute not merely indirect, but actual direct evidence of culpability or innocence." (Rossbacher Declaration at 31.) See also TR. at 22 – 25 and 57. And in his ex parte submission the Independent Counsel described the evidence which he believes establishes that the subpoenaed materials contain information relevant and necessary to his investigation of criminal activity. (Opposition at 8, discussing ex parte submission.)

The journalists also argue that the Independent Counsel has a tape of the broadcast segment and he fails to point to any portions of the broadcast which suggest that unbroadcast material may contain evidence which is essential to the Independent Counsel's effort to establish guilt or innocence—such as an admission of guilt by one of the subjects or targets of the investigation. (Motion and Memorandum at 3.) The Court is satisfied, however, that the government has determined that the subpoenaed materials are, in the words of the Independent Counsel, "essential to the progress of the Independent Counsel['s] and the Grand Jury's investigation." (TR. at 18, 29.) The Court is very familiar with this investigation and the information known to the Court together with other evidence in the instant record satisfies the Court the Independent Counsel has complied with this regulatory requirement.

One cannot be certain that the unbroadcast material contains information which tends to establish guilt or innocence more than the material which CBS chose to broadcast. See United States v. Karen Bags, Inc., 600 F.Supp. 667, 669 (S.D.N.Y. 1985) (court rejected criminal defendant's post trial application for media broadcaster's confidential unpublished material stating that "[b]ecause outrageous views and expressions are generally the best news, it is hard to believe that the 'out takes,' or unaired portions of the television interview of Weinberg by Mike Wallace are likely to contain any statements more inflammato-

3. In Opposition to the instant motion the Independent Counsel also submitted a Supplemental *Ex Parte* Declaration In Support Of

The Opposition. When the Court refers to the Opposition it is not citing the *ex parte* submission, unless otherwise indicated.

ry, sensational, outrageous, or interesting to the defense, than what CBS chose to broadcast. To suggest otherwise, or to assert that more helpful material exists in the 'out takes' is to rely on pure conjecture"). The Court finds, however, that the Independent Counsel should not be required to let determinations which were made by CBS two years ago about what to broadcast govern its decision to subpoena material which was not broadcast and which he believes may assist the investigation at this stage.

The journalists argue that the government has not shown that exigent circumstances require the issuance of subpoenas. Absent exigent circumstances the subpoenas can request only verification of the accuracy of the subpoenaed documents. But based on its previous findings that the subpoenaed materials are essential to the investigation and are not available from alternative sources, the Court finds that exigent circumstances exist.

The journalists further argue that the subpoenas are not appropriately limited in scope, that they are "fishing expeditions" and constitute "undisciplined prosecutorial interference with news gathering." (Motion and Memorandum at 7.) In *United States v. R. Enterprises Inc.*, 498 U.S. 292, 297, 111 S.Ct. 722, 726, 112 L.Ed.2d 795 (1991), the Supreme Court established the standard for evaluating grand jury subpoenas and reasoned:

> The grand jury occupies a unique role in our criminal justice system. It is an investigatory body charged with the responsibility of determining whether or not a crime has been committed . . . the grand jury "can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." (citation omitted) The function of the grand jury is to inquire into all information that might possibly bear on its investigation until it has identified an offense or has satisfied itself that none has occurred. As a necessary consequence of its investigatory function, the grand jury paints with a broad brush. "A grand jury investiga-

tion 'is not fully carried out until every available clue has been run down and all witnesses examined in every proper way to find if a crime has been committed.' " *Branzburg v. Hayes,* 408 U.S. 665, 701, 92 S.Ct. 2646, 2667, 33 L.Ed.2d 626 (1972).

The Supreme Court found that "a grand jury subpoena issued through normal channels is presumed to be reasonable, and the burden of showing unreasonableness must be on the recipient who seeks to avoid compliance." 498 U.S. at 300, 111 S.Ct. at 728. The Supreme Court held that a motion to quash a subpoena "must be denied unless the district court determines that there is no reasonable possibility that the category of materials the Government seeks will produce information relevant to the general subject of the grand jury's investigation." 498 U.S. at 301, 111 S.Ct. at 728.

The journalists have not shown that there is no possibility that the subpoenaed materials could produce evidence relevant to the subject of the investigation. Indeed, the Court finds that it is possible that the subpoenas could produce evidence which is relevant to the subject of the investigation. For they seek recorded statements made by individuals who are targets and subjects of the investigation about matters which are the focus of the investigation, to wit: the giving and receipt of gifts by Secretary Espy from individuals and companies having business before the Department of Agriculture. (Rossbacher Declaration at 27–29.)

Thus, the Court finds that the Independent Counsel has complied with the requirements of the Department of Justice's guidelines for issuing subpoenas to the news media and the motion to quash must be denied on this basis.

**B. Compliance With Subpoenas Would Not Be Unreasonable And Oppressive Under Federal Rule Of Criminal Procedure 17(c)**

In their papers the journalists object to the large volume of confidential materials

subpoenaed; material which they contend is not tailored to meet any particular need. But at oral argument counsel for the journalists stated that he has not seen the materials and does not know how voluminous they are: "I, frankly, haven't seen [the material], so I don't know how voluminous it is. And so we don't rely upon the notion that it's impossible to collect the material." (TR. at 14, 19.) At oral argument counsel for the journalists also made clear that the subpoenas do not cover confidential materials (TR. at 8, 38–39, 43–44), and the Independent Counsel represented that he does not seek confidential materials. (Rossbacher Declaration at 33.) Accordingly, it is the Court's understanding that the volume and confidential nature of the materials which are subject to the subpoena are not at issue. The journalists assert two other bases for their argument that the subpoenas are unreasonable and oppressive and must be quashed under Rule 17(c).

■ First, the journalists argue that the subpoenas are arbitrary fishing expeditions which the Supreme Court has prohibited in *United States v. R. Enterprises Inc.*, 498 U.S. at 299, 111 S.Ct. at 727. As discussed above, this Court finds that the journalists have not shown that there is no reasonable possibility that the materials sought will produce information relevant to the investigation. *Id.* at 301, 728, 111 S.Ct. 722. Accordingly, the subpoenas cannot be quashed on this basis.

■ Second, the journalists argue that the subpoenas are unreasonable and oppressive because they infringe on news gathering and First Amendment interests:

... the burden that is being asserted by the subpoenaed parties here is not simply one of inconvenience or time. The burden is that it's going to make their job very much—very difficult.

If a program like *60 MINUTES* is subject to being subpoenaed by the United States government to testify before a grand jury whenever they cover a matter that also happens to be [sic] subject of an investigation or that becomes a subject of an investigation, they'll have to function in a very different way, and people will look at them very differently from the way people look at them now.

The nature of the burden is that its an interference with their ability to function as journalists.

(TR. at 15.)

The journalists further state:

And the interest that's being protected is simply this: *60 MINUTES* reporters, reporters for other investigative broadcasts, news reporters in general, rely very heavily upon the common understanding that they are an independent entity, they are not an investigative arm of the Government.

. . . .

... if the perception is that, when you're talking to Mike Wallace or Robert Anderson or anybody else, you're talking to a prosecutor or a Grand Jury, they'll have much more difficulty getting people to speak to them.

. . . .

... if the government can annex the Fourth Estate any time it wants to, then the Fourth Estate will no longer be regarded as independent, and it will not be able to function as effectively.

(TR. at 44–46.)

The Independent Counsel points out that the journalists have not submitted any data or information which supports their contention that appearing before the grand jury will hinder their ability to function as journalists. (TR. at 20–21.) Moreover, Rule 17(c) does not contemplate the burden alleged by the journalists. To be sure, courts favor careful application of the rule against unreasonable and oppressive subpoenas where First Amendment interests are involved. In *In re Grand Jury 87–3 Subpoena Duces Tecum*, 955 F.2d 229, 234 (4th Cir.1992), the Fourth Circuit "caution[ed] district courts to apply with special sensitivity, where values of expression

are potentially implicated, the traditional rule that '[g]rand juries are not licensed to engage in arbitrary fishing expeditions, nor may they select targets of investigation out of malice or an intent to harass.'" *R. Enterprises,* 111 S.Ct. at 727. "The Fourth Circuit also noted that a subpoena for business records including customer lists of a distributor or sexually explicit films 'can potentially have a very chilling effect.'" *Id.* at 232, 111 S.Ct. 722. But more importantly the court noted that "the Supreme Court has twice declined to apply [heightened scrutiny] in cases involving subpoenas challenged on First Amendment grounds." *Id.* at 232, 111 S.Ct. 722 (citing *University of Pennsylvania v. EEOC,* 493 U.S. 182, 110 S.Ct. 577, 107 L.Ed.2d 571 (1990); *Branzburg v. Hayes,* 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972)). In *In re Grand Jury 87–3 Subpoena Duces Tecum,* the Court of Appeals rejected the witnesses' argument that the government must show that a subpoena implicating the First Amendment serves a compelling governmental interest and requests evidence substantially related to the investigation. *Id.* at 231–234. Thus, the well-established rule of *R. Enterprises* for evaluating subpoenas under Rule 17(c) applies to subpoenas implicating the First Amendment. Pursuant to that rule this Court finds that the instant subpoenas neither constitute an arbitrary fishing expedition, nor were they issued out of malice or with intent to harass. Rather, they are adequately tailored to produce relevant information. Accordingly, the motion to quash also must be denied on this basis.

## C. Enforcement Of Subpoenas Is Not Prohibited By Journalists' Common Law And First Amendment Privilege

Neither the Supreme Court nor the Court of Appeals for the District of Columbia Circuit has squarely addressed the application of a journalists' privilege in the grand jury setting where confidential sources are not involved. Both courts, however, have taken a position on constitutional protection for newsmen subpoenaed by grand juries—journalists, like all other citizens, must appear before a grand jury and generally must answer the questions put to them, unless the questions are put in bad faith or to harass the witness. Accordingly, the motion to quash must be denied on this basis as well.

The Supreme Court rejected a testimonial privilege for journalists in *Branzburg v. Hayes,* 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972). Albeit in dicta, the Supreme Court made clear that no such privilege is available in grand jury investigations unless the grand jury has acted in bad faith. The District of Columbia Circuit has followed the logic of the Supreme Court's plurality opinion in *Branzburg.* In *In re Possible Violations of 18 U.S.C.,* 184 U.S.App.D.C. 82, 564 F.2d 567 (1977), it held that a newsman does not enjoy immunity from grand jury questioning, unless the questions are put in bad faith or for purposes of harassment. To be sure that case involved a religious minister's claim that the First Amendment protected him from testifying before the grand jury until the government made a preliminary showing. The witness argued that the government should have been required to show that it was investigating a serious crime, that the witness was likely to have relevant information, that there was a substantial connection between the information sought and the governmental interest involved, and that no less drastic means were available to further the government's interest. 184 U.S.App.D.C. at 84, 564 F.2d at 569.

The District of Columbia Circuit rejected the minister's claim that his privilege was grounded in the First Amendment privilege allegedly espoused by the Supreme Court in *Branzburg v. Hayes* and opined that "[a]ppellant's view of the constitutional protection appropriate for newsmen[ ] . . . [was] wholly unsupported by the holding in *Branzburg.*" 184 U.S.App. D.C. at 85, 564 F.2d at 570. The District

of Columbia Circuit stated that the Supreme Court in *Branzburg* expressly rejected any requirement that the government make a preliminary showing before a newsman can be compelled to appear before a grand jury:

> The *Branzburg* majority ... rejected that formulation [requiring the government to make a preliminary showing] in clear and unmistakable terms. In their view, its adoption would frustrate the historic role of the grand jury in determining probable violations of the law. Further, its recognition would needlessly "embroil[ ] [courts] in preliminary factual and legal determinations with respect to whether the proper predicate had been laid for the reporter's appearance...."

184 U.S.App.D.C. at 85, 564 F.2d at 570 (citing *Branzburg v. Hayes,* 408 U.S. at 705, 92 S.Ct. at 2669).

The District of Columbia Circuit went on to hold that the Supreme Court's decision in *Branzburg* required a finding that religious workers, like newsmen and all other citizens, are not immune from grand jury testimony, absent a showing that the subpoena was issued in bad faith or to harass the witness:

> *Branzburg* squarely rejected the very privilege appellant asserts that it established. A newsman can claim no general immunity, qualified or otherwise, from grand jury questioning. On the contrary, like all other witnesses, he must appear and normally must answer. If the grand jury's questions are put in bad faith for the purpose of harassment, he can call on the courts for protection.
>
> It follows that appellant's parallel claim of a blanket religious-worker's privilege must fail.... In light of *Branzburg,* a contrary holding would sacrifice the essential societal interest in the detection and prosecution of crime without advancing any important First Amendment interest.

184 U.S.App.D.C. at 86, 564 F.2d at 571.

A recent decision by a court in an unrelated Independent Counsel investigation in Arkansas followed this approach on facts nearly identical to those presented here. In *In re Grand Jury Subpoena American Broadcasting Companies, Inc.,* 947 F.Supp. 1314 (E.D.Ark.1996) the Independent Counsel subpoenaed American Broadcasting Companies [ABC], in part, for material concerning unbroadcast portions of an interview. ABC moved to quash the subpoenas, in part, alleging that "the video footage and transcript of the ... interview which was not broadcast [was] protected from disclosure by the journalist's qualified privilege under the First Amendment." *Id.* at 1317. That court held that ABC's assertion of a journalists privilege under the First Amendment was foreclosed by the Supreme Court's decision in *Branzburg v. Hayes. Id.* at 1317. That court noted that in *Branzburg* the Supreme Court rejected the reporters' request that it create a testimonial privilege for newsmen which other citizens do not enjoy and it rejected the notion that a reporter is not required to appear before a grand jury unless the government can make a preliminary showing of need for the testimony. *Id.* at 1317–18. That court further found that the few cases which have created a privilege for journalists were civil cases and thus do not apply to grand jury proceedings, which serve an essential societal purpose. *Id.* at 1317, 1319. *See also In re Shain,* 978 F.2d 850, 852 (4th Cir.1992) ("we hold that ... absent evidence of governmental harassment or bad faith, the reporters have no privilege different from that of any other citizen not to testify about knowledge relevant to a criminal prosecution.")

The instant journalists concede that "there's no First Amendment right" for a newsman to not appear before a grand jury. (TR. at 50.) Nevertheless, they ask this Court to hold that they need not appear and provide grand jury testimony concerning classic news gathering activities. (TR. at 7.) They urge the Court to distinguish between cases in which journal-

ists are subpoenaed to testify about criminal conduct which they observed and wrote about, as opposed to cases in which journalists are subpoenaed to testify about their general news gathering and editorial functions. (TR. at 7.) The journalists allege that "nobody from *60 MINUTES* witnessed a crime," thus the claim of privilege is not foreclosed. (TR. at 11.) The journalists seek to discourage this Court from drawing distinctions based on the nature of the proceeding because they argue their privilege applies equally in civil, criminal, and grand jury cases because, they contend, "it makes no sense to say that there's a privilege in civil and criminal trials, but no privilege whatsoever in the Grand Jury context." (TR. at 7.) (Motion and Memorandum at 13.)

In support of this argument the journalists contend that "the vast majority of courts ... have read *Branzburg* as merely holding that [only] reporters who witness a crime may be compelled to testify before a grand jury." (TR. at 12.) The journalists also cite *In re Grand Jury Proceedings,* 520 So.2d 372, 375 (1988), where the Supreme Court of Louisiana stated that its reading of *Branzburg* required a holding that "unless a reporter has witnessed any criminal activity or has physical evidence of a crime, he may move to quash the [grand jury] subpoena or he may appear and refuse to answer certain questions." That court was persuaded by dicta in *Branzburg* acknowledging that reporters should enjoy some First Amendment protection. That court stated that "[t]he vast majority of the courts that have considered this issue after *Branzburg* have read *Branzburg* as merely holding that reporters who witness a crime may be compelled to testify before a grand jury as to whom and what they saw. These courts have proceeded to adopt the dissent's qualified privilege." *Id.* at 374–375, citing *Branzburg,* 408 U.S. at 708, 92 S.Ct. at 2670.

The journalists cite several other cases, including cases from this jurisdiction which they contend support their position.

This Court finds to the contrary. The authority which the journalists claim supports their position is inapposite. Most of the cases they cite concern civil causes of action and courts' concern for protecting reporters' confidential sources of information, a strong public interest in avoiding disclosure, or a party's failure to exhaust alternative sources of the information sought. *See Clyburn v. News World Communications, Inc.,* 284 U.S.App.D.C. 212, 218, 903 F.2d 29, 35 (1990) (confidential sources); *Zerilli v. Smith,* 211 U.S.App. D.C. 116, 124, 656 F.2d 705, 713 (1981) (confidential sources); *Carey v. Hume,* 160 U.S.App.D.C. 365, 373, 492 F.2d 631, 639, *cert. dismissed,* 417 U.S. 938, 94 S.Ct. 2654, 41 L.Ed.2d 661 (1974) (confidential sources); *Maughan v. NL Industries,* 524 F.Supp. 93 (D.D.C.1981) (alternative means of obtaining reporter's notes were available to civil defendant); *United States v. Hubbard,* 493 F.Supp. 202 (D.D.C.1979) (criminal defendant had not exhausted alternative sources for reporter's materials concerning allegedly illegal searches); *Democratic Nat'l Comm. v. McCord,* 356 F.Supp. 1394, 1398 (D.D.C.1973) (although court recognized privilege where alternative sources of information had not been exhausted for reporter's notes concerning break-in at the Democratic National Committee's offices, court stated that it "in no way wishes to imply that today's ruling constitutes the implicit recognition of an absolute privilege for newsmen. Such would clearly be improper under the *Branzburg* decision.") *See also Cervantes v. Time Inc.,* 464 F.2d 986 (8th Cir.1972), *cert. denied,* 409 U.S. 1125, 93 S.Ct. 939, 35 L.Ed.2d 257 (1973) (court affirmed grant of reporter's motion for summary judgment in libel action brought by mayor against magazine holding that it was proper to deny mayor opportunity to examine anonymous news sources); *Grunseth v. Marriott Corp.,* 868 F.Supp. 333, 335 (D.D.C.1994) (in candidate's action against hotel for invasion of privacy court held that compelled disclosure of information used by reporter in preparing news article

was precluded by First Amendment and District of Columbia Free Flow of Information Act where candidate had not shown societal interest which outweighed protection of reporter's sources or other public interest in disclosure).

Indeed all but two of the cases cited by the journalists do not concern federal grand jury subpoenas. One case which involves grand jury subpoenas concerned disclosure of confidential sources, which the journalists concede is not at issue here. *See In re Williams,* 766 F.Supp. 358, 370–71 (W.D.Pa.1991) (government failed to overcome qualified news gatherer's privilege against compelled disclosure of confidential news sources in grand jury investigation of leak in criminal trial by showing that it had attempted to obtain source information from alternative non-journalist sources), *aff'd by equally divided court,* 963 F.2d 567 (3d Cir.1992) (*en banc*).

█ The instant case is wholly unlike those in which courts are applying a qualified journalists privilege. The authority cited by the journalists does not support a decision contrary to that required by *Branzburg* and *In re Possible Violations of 18 U.S.C.* This Court agrees with the Independent Counsel that the line should be drawn at the nature of the proceeding; not depending on how the reporter obtained the information at issue. This Court declines to ignore the importance of the fact that this case involves subpoenas issued by a grand jury and "the essential societal interest in the detection and prosecution of crime." *In re Possible Violations of 18 U.S.C. 371, 641, 1503,* 184 U.S.App.D.C. at 85, 564 F.2d at 571. Indeed, one of the cases in *Branzburg* involved a journalist who did not witness a crime. The Supreme Court compelled him to appear and testify before the grand jury. In that case Mr. Caldwell was subpoenaed to testify about statements made to him by members of the Black Panther Party for publication in a *New York Times* series on the Black Panther Party. The subpoena *duces tecum* to Mr. Caldwell ordered him to appear before the grand jury to testify and to bring with him notes and tape recordings of interviews given him for publication by officers and spokesmen of the Black Panther Party concerning his aims, purposes, and activities of that organization.

. . . .

The subpoena ordered production of "(n)otes and tape recordings of interviews covering the period from January 1, 1969, to date, reflecting statements made for publication by officers and spokesmen for the Black Panther Party concerning the aims and purposes of said organization and the activities of said organization, its officers, staff, personnel, and members, including specifically but not limited to interviews given by David Hilliard and Raymond 'Massai' Hewitt."

*Branzburg* at 675–676 and n. 12, 92 S.Ct. 2646, 2653–2654 and n. 12.

The Supreme Court in *Branzburg* rejected the distinction which the instant journalists urge this Court to adopt, and found that the important function served by grand juries outweighs a journalist's interest in not appearing before a grand jury regardless of how the journalist obtained the information, i.e. via classic news gathering activities or by witnessing the crime. The Court stated:

The obligation to testify in response to grand jury subpoenas will not threaten these sources not involved with criminal conduct and without information relevant to grand jury investigations, and we cannot hold that the Constitution places the sources in these two categories either above the law or beyond its reach.

. . .

We see no reason to hold that these reporters, any more than other citizens, should be excused from furnishing information that may help the grand jury in arriving at its initial determinations.

*Branzburg* at 699–702, 92 S.Ct. 2646, 2666–2667.

The journalists further argue that the reporters' privilege against being compelled to testify about news gathering activities can be overcome only upon a three-prong showing of strict necessity. Specifically, the Independent Counsel must show (1) that the information sought is crucial to the case and essential to just resolution of the issues; (2) that the Independent Counsel exhausted all reasonable alternative sources of information; and (3) that societal interests in producing the information sought are sufficiently compelling to warrant abridgment of the journalists' First Amendment rights. The journalists argue that "every Circuit in the Country ... [has] read Justice Powell's [concurring] opinion [in *Branzburg* ] to authorize the kind of balancing before any kind of compelled testimony is required from reporters concerning news gathering activities as opposed to ... criminal activity that they ... observed." (TR. at 6.)

But this Court finds that Justice Powell's concurring opinion is consistent with Justice White's majority opinion in *Branzburg.* Both opinions found that no testimonial privilege exists for newsmen which does not exist for other citizens. Moreover, the government is not required to make a preliminary showing of need before a newsman can be required to appear before the grand jury. *Branzburg v. Hayes,* 408 U.S. at 690, 707–708, 92 S.Ct. at 2661, 2670–2671. Indeed the Supreme Court found that, if ever, the balance of interests may apply only when the grand jury's inquiry is not conducted in good faith. *See Branzburg,* 408 U.S. at 706–708, 92 S.Ct. at 2669–2671; *In re Possible Violations of 18 U.S.C.,* 184 U.S.App.D.C. at 86, 564 F.2d at 571. *See also In re Grand Jury 87-3 Subpoena Duces Tecum,* 955 F.2d 229, 234 (4th Cir.1992); In re Grand Jury Subpoena American Broadcasting *Companies, Inc.,* 947 F.Supp. 1314 (E.D.Ark.1996); *In re Grand Jury Proceedings,* 5 F.3d 397, 401 (9th Cir.1993),

*cert. denied,* 510 U.S. 1041, 114 S.Ct. 685, 126 L.Ed.2d 652 (1994); *In re Grand Jury Proceedings,* 810 F.2d 580, 585 (6th Cir. 1987).

■ The Supreme Court has consistently rejected procedural delays, detours and disruptions in grand jury investigations which undoubtedly would accompany adoption of the approach advocated by the journalists. *See U.S. v. R. Enterprises, Inc.,* 498 U.S. at 298–301, 111 S.Ct. at 726–728. Like all other citizens, these journalists must appear and answer questions put to them. If the journalists believe that the grand jury's questions are in bad faith or intended to harass them, then they may seek protection from the Court. Similarly, if the grand jury attempts to learn the journalists' confidential sources—an issue which both parties agree is not presently before the Court (TR. at 8, 38–39, 43–44)—then the journalists also may seek protection from the Court. Otherwise the journalists must appear and answer questions put to them.

Even assuming *arguendo* that a reporters privilege exists and requires the three-prong showing advocated by the witnesses, the Court finds that the Independent Counsel has made the requisite showing. The subpoenaed materials are relevant to the Independent Counsel's efforts to determine guilt or innocence. Moreover, "[t]he government cannot be required to justify the issuance of a grand jury subpoena by presenting evidence sufficient to establish probable cause because the very purpose of requesting the information is to ascertain whether probable cause exists." *R. Enterprises, Inc.,* 498 U.S. at 297, 111 S.Ct. at 726. "Some exploration or fishing is necessarily inherent and entitled to exist." *Universal Mfg. Co. v. United States,* 508 F.2d 684, 686 (8th Cir.1975) (*per curiam* ). The Court also found that the Independent Counsel has exhausted alternative sources for the information sought. The journalists did not address the third prong of their test in their papers or in oral argument—presumably because they

contend the first two criteria have not been met thus it is not necessary to reach this prong. The Court also finds for sake of argument that the Independent Counsel has satisfied the third prong of the test. On the instant record the interest in ensuring that the grand jury has every person's evidence is sufficiently compelling to risk abridgment of the journalists' alleged First Amendment rights. *See Branzburg v. Hayes,* 408 U.S. at 705, 92 S.Ct. at 2669; *In re Possible Violations of 18 U.S.C.,* 184 U.S.App.D.C. at 86, 564 F.2d at 571; *In re Grand Jury Subpoena American Broadcasting Companies, Inc.,* 947 F.Supp. 1314, at 1320 (E.D.Ark.); *In re Shain,* 978 F.2d at 852.

Lastly, the Court finds that the journalists' concern that enforcement of the subpoenas would have the effect of making the press an investigative agent of the government is without merit. As discussed above, the Independent Counsel has made clear that it seeks information which it believes is essential to its investigation and that he has exhausted alternative sources of the information sought. The broadcast segment covered matters plainly within the Independent Counsel's jurisdiction and it is possible that the out takes, reporter's notes taken during pre-interviews and at other times during the production of the segment, and other unbroadcast material contain statements on matters which are relevant to the investigation.

### D. The Subpoenas Do Not Exceed The Limited Scope Of The Independent Counsel's Authority

■ The Independent Counsel's authority is defined by the Constitution, the Ethics in Government Act, and the Special Division's Order appointing Mr. Smaltz as Independent Counsel. The Special Division's Order authorizes Mr. Smaltz to investigate "whether [Secretary Espy] has committed a violation of any federal criminal law ... relating in any way to the acceptance of gifts by him from organizations or individuals with business pending before the Department of Agriculture." *Order* at 2. The Independent Counsel also enjoys authority to investigate "allegations or evidence of violation of any federal criminal law ... by any organization or individual developed during the Independent Counsel's investigation referred to above and connected with or arising out of that investigation." *Id.*

As discussed above, the Court has found that the subpoenas seek evidence which is well within the scope of the Independent Counsel's authority. The subpoenas require production of testimony and documents related to the production of a segment which addressed the issues assigned to Mr. Smaltz for investigation, specifically, the alleged exchange of gratuities from individuals with matters pending before the Department of Agriculture for favorable treatment by the Department. (Rossbacher Declaration at 29–30.) Thus, the subpoenas do not exceed the limited scope of the Independent Counsel's authority. Under the standard set forth in *United States v. R. Enterprises,* 498 U.S. at 301, 111 S.Ct. at 728, it cannot be said that there is "no reasonable possibility that the category of materials the Government seeks will produce information relevant to the general subject of the grand jury's investigation." Accordingly, the motion to quash must also be denied on this basis.

### E. The Independent Counsel's Office Is Not Improperly Using Subpoenas To Gather Evidence For Pending Indictments

■ It is well settled that abuse of a grand jury to gather evidence for a pending indictment is improper. *See In re Grand Jury Proceedings (Pressman),* 586 F.2d 724 (9th Cir.1978) (*per curiam*); Paul S. Diamond, Federal Grand Jury Practice And Procedure § 4.01[C] (3d ed.1995). But the investigation may properly continue so long as criminal discovery is not the prosecutor's "sole or dominant"

purpose. Thus, the investigation is proper if it is intended to result in the return of additional indictments, the indictment of others, or where the investigation of the indicted individuals is not complete. Paul S. Diamond, Federal Grand Jury Practice And Procedure § 4.01[C] (3d ed.1995). The defendant generally bears the burden of proving the abuse. *Id.*

■ The Court questions whether the journalists have standing to challenge the propriety of the Independent Counsel's continued investigation of the indicted individuals. In any event, the journalists have not presented any evidence which would tend to support a claim that the subpoenas seek evidence concerning matters which are the subjects of the pending indictments, let alone that this is their sole or dominant purpose. Rather, the subpoenas call for materials concerning Secretary Espy's alleged acceptance of gratuities from Tyson Foods in exchange for preferential handling of matters pending before the Department.

To the limited extent that these subpoenas could produce evidence supporting the pending indictments, this Court credits the Independent Counsel's representation that the investigation of those individuals continues. The subpoenas may properly be used to seek additional indictments against them. Accordingly, based on the instant record these subpoenas do not constitute an attempt to abuse the grand jury. The Court must deny the motion to quash on this basis.

## II. Journalists' Request For Disclosure Of Their Motion And Memorandum

■ The Court also must deny the journalists' request to unseal their motion and memorandum. Federal Rule of Criminal Procedure 6(e)(2) prohibits disclosure of "matters occurring before the grand jury." Rule 6(e)(6) requires that "[r]ecords, orders and subpoenas relating to grand jury proceedings shall be kept under seal to the extent and for such time as is necessary to prevent disclosure of mat-

ters occurring before a grand jury." And Local Rule 302 requires that "[p]apers, orders and transcripts . . . may be made public by the Court on its own motion or on motion of any person upon a finding that continued secrecy is not necessary to prevent disclosure of matters occurring before the grand jury." The journalists also have the burden of showing that a particularized need for disclosure outweighs the interest in continued grand jury secrecy. *Douglas Oil v. Petrol Stops Northwest*, 441 U.S. 211, 222, 99 S.Ct. 1667, 1674, 60 L.Ed.2d 156 (1979).

In order to grant the journalists' request this Court must find that "continued secrecy is not necessary to prevent disclosure of matters occurring before the grand jury." To the contrary, the instant facts support a finding that continued secrecy is necessary. Neither have the journalists made the showing required by *Douglas Oil*; in a footnote they assert only that "the motion and memorandum disclose nothing about the grand jury proceeding . . . [and] request that the motion and memorandum be unsealed immediately." (Memorandum at 2 n. 1)

■ The grand jury investigation is continuing. The motion and memorandum contain significant information about the direction of the investigation and matters occurring before the grand jury. The motion and memorandum name persons who are involved in the investigation and copies of the subpoenas are attached to the memorandum as exhibits. Thus, disclosure would reveal the essence of what is taking place in the grand jury room, and the substance of the jurors' investigation and deliberations. *See In re Sealed Case*, 255 U.S.App.D.C. 340, 801 F.2d 1379 (1986); *In re DiLoreto*, 903 F.2d 180 (3d Cir.1990); *In re Grand Jury Proceedings*, 813 F.Supp. 1451, 1469 (D.Colo.1992). Lastly, although disclosure of the motion and memorandum would not appear to risk the escape of prospective indictees, continued secrecy is necessary to insure freedom to

the grand jury in its deliberations, to prevent subornation of perjury and tampering with witnesses by targets of the investigation, to encourage free disclosure by witnesses before the grand jury, and to protect those who may be exonerated by the grand jury from disclosure of the fact that they were under investigation. *See In re Grand Jury Proceedings*, 62 F.3d 1175, 1179–1180 n. 2 (9th Cir.1995).

### Conclusion

The Court finds that the Independent Counsel has complied with the Department of Justice's guidelines for issuing subpoenas to the news media, that compliance with the subpoenas would not be unreasonable and oppressive under Federal Rule of Criminal Procedure 17(c), that on the instant record the so-called journalists privilege against compelled testimony does not apply in this grand jury case, that the subpoenas do not exceed the scope of the Independent Counsel's authority, and that the Independent Counsel is not improperly using the subpoenas to prepare for trial on pending indictments.

Accordingly, it is hereby

**ORDERED** that the **motion to quash** the subpoenas duces tecum is denied; it is further

**ORDERED** that the journalists shall appear before the grand jury and give testimony and produce the documents requested pursuant to the subpoena; and it is further

**ORDERED** that the journalists' **request to unseal** the motion and supporting memoranda is denied and that the entire file in this case shall remain under seal until further order of the Court.